SIX HUNDRED AND THIRTY CASKS OF SHERRY WINE (VAUGHAN v.). See Case No. 16,900.

SIX LOTS OF GROUND (UNITED STATES v.). See Case No. 16,299.

———

## Case No. 12,919.

SIXPENNY SAV. BANK v. ESTATE OF STUYVESANT BANK.

NEW YORK SAV. BANK v. SAME.

[12 Blatchf. 179;[1] 10 N. B. R. 399; 9 N. B. R. 318; 1 Cent. Law J. 83.]

Circuit Court, S. D. New York. June 16, 1874.

BANKRUPTCY — STATUTORY LIEN ON ASSETS OF BANK—DISTRIBUTION.

The act of the legislature of New York passed April 15, 1853 (Laws 1853, c. 257), provided that it should be lawful for savings banks in the county of New York to make temporary

———

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

deposits in banks to a limited amount and for a limited time, and that all the assets of any bank that should become insolvent should, after providing for the payment of its circulating notes, be applied by the directors thereof, in the first place, to the payment of any sum or sums of money deposited with such bank by any savings bank, within the range of amount so limited. A savings bank in the county of New York deposited moneys in the Stuyvesant Bank, upon the understanding that the deposits would have the benefit of this statute. The Stuyvesant Bank was adjudged a bankrupt. The savings bank proved its debt and claimed to be entitled to be paid in full from the assets, before any payment should be made to other creditors, and to their exclusion, if need be, on the ground that it had, by virtue of the state statute, an interest in, or lien on, the property of the bankrupt: *Held*, that the statute provided a rule of distribution merely, and that the savings bank had, by virtue of the state statute, no lien, and was an ordinary creditor of the bankrupt, entitled to a distributive share of the assets, without preference.

[Cited in Re Baker, Case No. 762.]

[In review of the action of the district court of the United States for the Southern district of New York.]

The district court made an order disallowing the claim of the Sixpenny Savings Bank and the claim of the New York Savings Bank to be paid out of the assets of the estate of the Stuyvesant Bank, a bankrupt, the amounts of their debts, as proved, in full, as debts entitled to a priority in payment. The claimants brought the matter before this court, on petitions of review. The decision of the district court (Blatchford, District Judge) was as follows:

"The second section of the act of the legislature of the state of New York passed April 15, 1853 (Laws 1853, c. 257), provides that it shall be lawful for any savings banks or institutions for savings in the city and county of New York, then chartered, or which might be thereafter chartered, 'to make temporary deposits in any bank or banking association, to an amount equal to ten per cent. of the actual cash capital stock paid in, of such bank or banking association, and to receive interest thereon at such rates, not exceeding that allowed by law, as may be agreed upon, provided that all the deposits in any one bank or banking association shall not exceed in amount twenty per cent. of all the deposits belonging to such savings bank or institution for savings, and that no contract or agreement in relation to said deposits shall be for a longer period than one year.' The third section of the said act provides that 'it shall not be lawful for any of such savings banks or institutions for savings to make any loans to any bank or banking association, exceeding the limits above prescribed, unless such savings bank or institution for savings shall require and receive of such bank, for all sums so deposited exceeding the limits above prescribed, such securities therefor, and equal in amount, as the comptroller or superintendent of the banking department is now lawfully authorized to receive in exchange for bills or notes for circulation.' The fourth section

of said act provides that 'all the assets of any bank or banking association, now or hereafter to be created, that shall become insolvent, shall, after providing for the payment of its circulating notes, be applied by the directors thereof, in the first place, to the payment of any deficiency that may arise on the sales of the securities aforesaid, and, thereafter, of any sum or sums of money deposited with such bank or banking association by any savings bank or institution for savings, within the range of twenty per cent., as provided in the second section of this act.'

"The first section of the act of the legislature of the state of New York, passed April 10, 1858 (Laws 1858, c. 136), provides that 'the temporary deposits which any savings bank or institution for savings in the city and county of New York * * * is authorized to make by the second section of chapter two hundred and fifty-seven of the laws of eighteen hundred and fifty-three, shall not exceed in amount twenty per cent. of all the deposits belonging to any such bank or institution for savings in any bank of issue, exceed in the aggregate, at one time, the sum of one thousand dollars.'

"The Sixpenny Savings Bank of the City of New York, a savings bank in the city and county of New York, chartered by the state of New York, as a corporation, has proved against the estate of the bankrupt, a claim for the sum of $23,261.06, with interest thereon, at the rate of five per cent. per annum, from the 11th of October, 1871. In its proof of debt, it claims that, under the said two acts, it has a valid and first lien on the assets of the estate of the bankrupt, and is, in the distribution and division of said estate, entitled to a preference or priority of payment prior to any creditor of the bankrupt other than the New York Savings Bank, on the ground that the said moneys were deposited and loaned under the express agreement that the Sixpenny Savings Bank should be entitled to such priority under the said two acts, and that the said two acts entered into, and formed a part of, the contract under which said deposit or loan was made to the bankrupt.

"The New York Savings Bank, a savings bank in the city and county of New York, chartered by the state of New York, as a corporation, has proved against the estate of the bankrupt a claim for the sum of $20,020.41, with interest thereon, at the rate of seven per cent. per annum, from the 12th of October, 1871. In its proof of debt, it claims that, under the said two acts, and its agreement with the bankrupt thereunder and in pursuance thereof, prior to the insolvency of the bankrupt, or any suspension thereof, it is entitled to have its said claim paid in full out of the assets of the bankrupt, before any payment is made to other creditors not entitled by law to a preference.

"Assuming that all, or some parts, of the amounts of these claims, fall within the terms of the provisions of the state acts, the question arises whether the priority or preference claimed under the fourth section of the state act of 1853, can be allowed, in the distribution of the assets of the bankrupt.

"It is contended, on the part of the savings bank, that, by virtue of the agreements made by them with the bankrupt, under and within the provisions of the state acts, they acquired a lien on all the assets of the bankrupt, in case of insolvency, and are, in the distribution of the proceeds of its assets, entitled to the same preference and priority of payment over its general creditors to which they would have been entitled if its assets had been distributed under the state laws; that the provision of the fourth section of the state act of 1853, is not an insolvent law; that it contemplates a lien on the present and future assets of the banks; that all liens are made in contemplation of insolvency, in the same sense as the lien created by said fourth section; that the bankruptcy act preserves all liens, both legal and equitable, and all charges or incumbrances, and, except in cases of fraud on the act, gives to the assignee in bankruptcy only such rights and interests in the estate of the bankrupt as the bankrupt had or could assert; and that the rights acquired by the savings banks under the state act, were rights of property, in the form of contracts, constituting equitable liens, which can be enforced against the estate of the bankrupt in the hands of the assignee in bankruptcy, to the same extent to which they could have been enforced against the estate of the bankrupt in the hands of the bankrupt, in case of insolvency, if there had been no proceedings in bankruptcy.

"I have given much consideration to the question involved, especially in view of the fact that, at a prior stage of these proceedings, I indicated an opinion in support of the claims of savings banks, when the question was submitted to me on written briefs. But an oral re-argument, and a full consideration of the provisions of the bankruptcy act, have led me to the conclusion that those claims cannot be allowed.

"I do not think that those claims can, under the terms of the state act, be properly considered as rights of property, inhering in, or adhering to, the property of the bankrupt. The savings banks, it is true, made contracts with the bankrupt, but those contracts were merely contracts for the making of deposits, and the paying of interest thereon. No part of the state act gives any lien for such deposits on any of the assets of the bankrupt. Those assets, consisting, in part, of the moneys so deposited, could be dealt with, and disposed of, by the bankrupt, free from any lien, charge, or incumbrance thereon, arising out of such contracts. No provision of the state act purports to interfere with the disposition of the assets of the bankrupt, until insolvency occurs, and then a rule for the application of such assets, in the distribution of the estate of the bankrupt, as the estate of an

insolvent debtor, is created by the fourth section of the state act of 1853. But that rule establishes in favor of the savings banks no such interest in the property of the bankrupt, that such property passes, under the bankruptcy act, into the hands of the assignee, subject to such interest.

"The second section of the bankruptcy act of August 19, 1841 (5 Stat. 442), provided 'that nothing in this act contained shall be construed to annul, destroy, or impair * * * any liens, mortgages, or other securities on property real or personal, which may be valid by the laws of the states respectively, and which are not inconsistent with the provisions of the second and fifth sections of this act.' By the fifth section of the act of 1841 all creditors were to share pro rata in the bankrupt's property, except that debts due to the United States, and debts due to persons who, by the laws of the United States, had a preference in consequence of paying moneys as sureties for the bankrupts, and debts due to operatives (to a certain amount) were to be first paid out of the assets. In determining what ought to be regarded as 'securities on property,' 'valid by the laws of the states,' within the meaning of the second section of the act of 1841, it was held that all vested legal or equitable rights and interests in property, created by the laws of the states, were left undisturbed. Storm v. Waddell, 2 Sandf. Ch. 494, 502; Parker v. Muggridge [Case No. 10,743]; Mitchell v. Winslow [Id. 9,673]; Winsor v. McLellan [Id. 17,887]. This view cannot be questioned; and it is equally applicable to the present bankruptcy act, notwithstanding any difference in language between it and the act of 1841, in any provision in regard to liens. But it still leaves open the question as to whether a particular claim is a right or interest in property. If it is not, it is not a lien or security. There may be priorities or preferences in distribution under the bankruptcy act, which cannot be called liens or securities, or rights or interests in property. Debts due to the state in which the proceedings in bankruptcy are pending, are, by the twenty-eighth section of the present act, entitled to priority or preference and to be first paid in full, as the third class of claims in order; and there may be many such debts due to such state which are not by the laws of such state made liens or securities, so as to create rights or interests in property, and which depend wholly, for their preference or priority, on the terms of the twenty-eighth section. The same thing is true of the provision of the twenty-eighth section, giving preference to wages due to certain persons.

"The twenty-eighth section of the present act provides that certain claims shall 'be entitled to priority or preference, and to be first paid in full in the following order.' Then follow five classes. The fifth is, 'all debts due to any persons who, by the laws of the United States, are or may be entitled to a priority or preference, in like manner as if this act had not been passed.' This is limited to priorities or preferences created by the laws of the United States. It does not extend to priorities or preferences created by the laws of a state. Under it, the state could have no priority for debts due to it which were not liens or securities, and, but for the provision, in the third class of priorities, for such debts due to the state, there could be no priority for such debts. It would have been easy to say, in the provisions for distribution in the twenty-eighth section, that a priority or preference, as a sixth class, should be given to 'all debts due to any persons who, by the laws of the state in which the proceedings in bankruptcy are pending, are or may be entitled to a priority or preference, in like manner as if this act had not been passed,' if it had been intended to recognize priorities or preferences given by the laws of the state, which are not liens or securities or rights or interests in property. If the preference or priority given by the fourth section of the state act of 1853 is to be upheld, in a distribution under the 28th section of the bankruptcy act, on the ground that it can be called a lien or security, to be satisfied before the twenty-eighth section comes into operation, it is difficult to see why every priority or preference in the distribution of the estate of an insolvent debtor, created by a state law, must not be upheld. Every such priority or preference is relied on by the person in whose favor it operates, equally with the preference under the fourth section of the state act of 1853, relied on in this case. Every such priority or preference is a security to such person, as much as the preference in the present case was a security to the savings banks. But such priorities or preferences created by state laws in the distribution of insolvents' estates, are not liens or securities or rights or interests in property. If so, they are not saved by the general scope of the bankruptcy act; and they are not recognized by the twenty-eighth section.

"The claims to priority on the part of the savings banks must be disallowed."

[2] [The thirty-seventh section of the bankruptcy act provides in substance that the property and assets of a bankrupt corporation shall be distributed as the assets of a natural person would be under the act. Section 28 directs the order of distribution of the assets of a natural person.

[The counsel for the savings banks contend, however, that section 28 applies only to what portion of the bankrupt's estate remains after satisfying prior or paramount interests or titles, and that the savings banks have, under the statute of New York on which they rely, a prior or paramount title in the nature of a lien, the amount of which must be deducted from the whole mass of the bankrupt's estate in the hands

---

[2] [From 10 N. B. R. 399.]

of the assignee, leaving the residuum for distribution under the twenty-eighth section.

[The assignee, however, contends that (1) the statute of New York did not create a right of property in the nature of a lien or otherwise, but (2) only imposed upon the officers therein mentioned the duty of observing a certain rule of distribution in case of insolvency, which rule the legislature or congress had a right to abrogate.] [2]

Frederick Hughson, for New York Savings Bank.

D. Noble Rowan, for Sixpenny Savings Bank.

Francis N. Bangs, for assignee in bankruptcy.

[2] [In support of the views of the assignee, the following propositions are submitted.

[First. The New York statute relied upon by the claimants is similar in its language to other statutes of the same state, and of other states, and of the United States, such as the statute for the distribution of the estates of absconding debtors, or of deceased persons, or of bankrupts.

[Second. If the statute in question gives to a savings bank a right of property in the nature of a lien, then the other statutes above mentioned give a like right, in the nature of a lien, to all persons entitled under them to shares in the estate which is to be distributed.

[Third. The right which the New York act gives does not accrue at the time of making a deposit (unless the depository bank is then insolvent). The savings bank does not after deposit retain the ownership of its own deposit, nor does it at the time of deposit acquire a right of property or appropriation in, nor any specific claim against, any other specific thing. It is (until insolvency at least) a general creditor—the holder of a chose in action.

[Fourth. If in each deposit, as it is made, there inheres a right of property, or if there springs up from it a right of appropriation, then that right must necessarily attach to everything else in the possession of the depositary, except that, the deposit of which created a like exclusive right; or else each deposit creates a lien on the next deposit, and each depositor of the class provided for is both pledgor and pledgee. If the New York Savings Bank deposits one thousand dollars on one day, and the Sixpenny Bank one thousand dollars on the next day, the second deposit is subject to the lien of the first. If, then, the New York Bank makes another deposit, that is subject to the lien of the second, and so on. The use, by the depositary, of any deposit after the first would be a conversion of another's property. This idea is inconsistent with the obligation to pay interest, and is otherwise out of joint with the necessities of a banking system.

[Fifth. If the statute relied upon, and other like statutes, create a right of property or a vested interest, then, of course, such right of property or vested interest is indefeasible, except by the act of the party. Thus, under section 28 of the bankruptcy act, a servant to whom his master now owes wages has an indestructible lien for such wages, which lien congress, by a repeal or modification of the bankruptcy act, could not deprive him of. To argue thus, however, would be plainly a reductio ad absurdum, which would bring argument to an end, for there can be no doubt of the power of congress to modify section 28, nor of the power of the New York legislature to repeal the act referred to.

[Sixth. The provision referred to applies only in case of insolvency. A bank of deposit in a solvent condition may be wound up without first paying off savings bank depositors. This could not be so if such depositors were, qualifiedly or unqualifiedly, proprietors of any part of the estate.

[Seventh. These arguments and illustrations show that the claimants had not a right of property, in the nature of a lien or otherwise, in the estate of the Stuyvesant Bank; and the alternative is inevitable that the New York statute only imposed on certain agents, therein designated, the duty of observing a certain rule, upon a certain contingency, in the distribution of certain estates.

[Eighth. This rule was subject to abrogation by any authority having paramount power to legislate on the subject. Certainly the New York legislature might, before the Stuyvesant Bank became insolvent, have altered the rule. If it had done so, it would no more have interfered with vested rights than the British parliament would by abolishing the law of primogeniture, or regulating the distribution of intestate estates. Congress, having paramount control over the subject, could do the same thing, and in doing it, would violate no constitutional nor moral right; for it would give the savings bank ample opportunity to withdraw its funds; or rather the savings bank, if it continued its deposits after the passage of the bankrupt law, would act in spite of ample warning.

[Ninth. If the savings bank had no right of property or of appropriation, in the nature of a lien or otherwise, in the estate of the bankrupt, then that whole estate becomes subject to the operation of sections 37 and 28 of the bankruptcy act, and under those sections the claim to priority should be rejected.] [2]

HUNT, Circuit Justice. The facts in the two cases presented are the same, with the exception of a difference only in the amount claimed. A statement of the facts in the case

---

[2] [From 10 N. B. R. 399.]

[2] [From 10 N. B. R. 399.]

of the Sixpenny Savings Bank will suffice for a statement in the case of the New York Savings Bank as well.

The Sixpenny Savings Bank is a savings bank in the city of New York, chartered by the state of New York, and has proved against the estate of the bankrupt a claim for the sum of twenty-three thousand two hundred and sixty-one dollars and six cents, with interest at the rate of five per cent. per annum from October 11th, 1871. It claims that under the statutes of the state of New York, which will be presently mentioned, it has a first lien upon the assets of the estate of the bankrupts, and is entitled to a priority of payment, by virtue of those statutes, and the agreement under which the debt was contracted over the other debts of the bankrupt. The statute of the state of New York, passed April 15, 1853 (Laws N. Y. 1853, c. 257), provides that it should be lawful for a savings bank in the counties of New York and Kings to make temporary deposits in bank or banking associations to a limited amount and for a limited time. In certain cases the savings bank may receive as security for such deposits securities of the character of those authorized to be received by the controller or superintendent of the bank department in exchange for bills for circulation. It is provided in section 4 of the act that "all the assets of any bank or banking association, now, or hereafter to be created, that shall become insolvent, shall, after providing for the payment of its circulating notes, be applied by the directors thereof in the first place to the payment of any deficiency that may arise on the sales of the securities aforesaid, and thereafter for any sum or sums of money deposited with such bank or banking association by any savings bank or institution for sa*ngs within the range of twenty per cent., as provided in the second section of this act." The act of 1858 (Laws 1858, c. 136) imposes certain further limits and restrictions, but contains nothing to affect the question before us. The Sixpenny Savings Bank made deposits with reference to these acts, and upon the understanding that the deposits would have the benefit of the provisions referred to. In making proof of its debt it claims to be entitled to payment in full from the assets of the bankrupt before any payment is made to any other creditors, and to their exclusion, if need be. The question comes to this: Is the statute, which declares that the debt of the savings bank shall be paid next after the claim of billholders, and to the exclusion, if need be, of all other creditors, a rule of distribution of estates appertaining to the remedy only, or does it give to the bank an interest in, or lien upon the property of the insolvent corporation? If the former only it is conceded that the claim of the petitioners must fail; if the latter, then the exclusive payment of the debt is insisted upon.

As bearing upon, and illustrating this question, certain provisions of the constitution and statutes of the state of New York are worthy of consideration. The constitution of that state, adopted in November, 1846, contains the following provision: "In case of the insolvency of any bank, or banking association, the bill-holders thereof shall be entitled to preference in payment over all other creditors of such bank or association." Article 8, § 8.

By the act of 1855 (chapter 69, § 13) it was provided that the receiver should apply the moneys in his hands to the payment of the bills or notes held by the bill-holders of such corporation in just and equal proportions, and if no surplus remains he shall divide the same among the creditors of the corporation having demands contracted after the 1st day of January, 1850, and any remaining surplus shall be divided among all the other creditors of the corporation whose demands shall have been presented and ascertained. By the insolvent laws of the state of New York the estate of the insolvent is directed to be distributed as follows, viz.:

First. All the debts due to the United States shall be paid.

Second. All debts due to persons who, by the laws of the United States, have a preference in consequence of having paid money as sureties of such debtors.

Third. All the debts due from the debtor as guardian, executor, administrator, or trustee.

Fourth. Debts due execution creditors, issues of attachment, etc., in the various cases specified. In all cases certain costs and disbursements are to be first provided for. 3 Rev. St. (5th Ed.) pp. 119, 120 (marg. pp. 46, 47, pt. 2).

In cases of intestacy the statutes of that state enact that the personal estate of the deceased shall be distributed as follows, viz.:

First. To the widow one-third part thereof after the payment of the debts of the deceased.

Second. All the residue among the children, and the representatives of the children, if any have died before the intestate, in equal proportion.

Third. If there be not any children, or representatives of them, one moiety of the whole shall be allotted to the widow, and the residue to the next of kin, as afterwards provided.

Numerous details for other cases are given in the subsequent sections of the statutes; relatives of the half blood taking equally with those of the whole blood in the same degree; and descendants begotten before the death of the intestate, but born after, taking in the same manner as if born in the lifetime of the deceased, and as if they had survived him. 3 Rev. St. (5th Ed.) pp. 183, 184 (marg. p. 97, pt. 2). Subsequent to all these are the provisions of the statutes of 1853 and 1858, now before us, to the effect that upon the occurrence of the insolvency of a banking corporation the debts due from it to the holders of its circulating notes shall be first paid. The debts due to savings banks upon sales of securities given to such savings banks to secure payments of debts due to them, or upon de-

posits. shall be next paid, and no other debts can be paid until those mentioned are fully satisfied.

I am of the opinion that these laws are all of the same general character: that they are statutes furnishing a rule of distribution merely, and do not give any interest in or place any lien or incumbrance upon the estate to be disposed of. If distribution is to be made under the state laws, these rules will govern such distribution, because they are the rules made by the state, not because a lien or right in the property is conferred by them.

The soundness of the position that liens are preserved under the bankrupt act, and that the holders of them are to be protected, cannot be well doubted.

The bankrupt act of 1841, in its second section, was very explicit on this subject. and it was repeatedly held that liens or rights of property created by the laws of the state could not be disturbed while enforcing the provisions of the act. The rule is the same under the present bankrupt law, and although not stated in terms so precise and specific as are found in the act of 1841, the provisions of sections 14 and 20 establish the same rule.

I concur with the counsel for the appellant and petitioner, that if the savings bank had a lien upon the assets of the Stuyvesant Bank, that lien must be protected in the distribution of its assets. Nor do I find any fault with his definition of a lien, to wit: that which gives a vested right or interest in the property sought to be appropriated. The preferences given by the statutes of the state of New York already mentioned, or by the fifth subdivision at the end of the twenty-eighth section of the bankrupt act. cannot properly be described as liens. Those under the state laws and those under the twenty-eighth section are alike in their nature and character. They are rules or directions for the disposition of the property of the bankrupt or insolvent made because they seem wise and just, and which may be modified or abrogated whenever it becomes apparent that they are unwise or unjust. The debts due the United States from an individual citizen, it is enacted, must be first paid whether they are for taxes or for individual debts, or for debts due as surety for another, whether fiduciary, confidential, commercial, or in the nature of an enforced compulsory obligation. If A B becomes surety for C D. under the revenue laws of the United States, and a default ensues, although without his participation or knowledge, his estate in bankruptcy is liable for the debt of his principal, and the United States will receive payment in preference to his own creditors.

In the exercise of its sovereign power, the government so enacts, and therefore such is the law, but the government had no lien upon the estate either when he became surety for the government debtor, when that debtor failed to pay, or when he himself became bankrupt. His property was his own throughout, subject to consumption, exchange, or other use until its status became fixed by the provisions of the bankrupt act. In cases of preference under the state laws, no interest is acquired in the property of the debtor either by deposit in the bank—for it may then be solvent, and the money goes into its business and forms a part of its general funds—nor by insolvency founded upon the principle that the event can produce no such result, and it is not declared in the statutes that such shall be its effect. No lien upon or specific interest in the property is declared in favor of any preferred creditors, and it is difficult to see when, where, or by what process the change from general creditor to a creditor with specific lien occurs. The language of the statute is satisfied by a rule of preference in making payment. This is easily understood, and I think is the basis of the law. I do not doubt that there may be a trust estate in which the trustee may have power from time to time to change investments, and that the lien may attach to new securities as they form a part of the estate. This does not, however, affect the main question. It is possible, too, that the fluctuating assets of a bank of discount and deposit may be the subject of a trust, although I do not recollect to have met with any case that sustained that proposition. Neither does it affect the main question in this case, to wit. the existence of a lien. Preference is given by the bankrupt act, and it usually is by the state laws, to debts due to the state in which the bankruptcy proceedings are pending. As the sovereign authority upon a subject within the jurisdiction of the federal authority, congress provides first for the payment of debts due to the United States. In apparent deference to the authority which would be supreme, except for its own intervention, it enacts that debts due to the state in which the proceedings are pending, shall next be paid. This preference exists simply because the act of congress so enacts, and if congress had not so enacted, or if it should afterwards enact otherwise, the preference would cease. It is a rule of distribution merely, and if congress should abolish the preference given by the act to either government, it would be an exercise of undoubted power and no right or liens would be infringed. The power to establish a system of bankruptcy carries with it the power to establish the details of the system if congress shall think proper. In like manner, it is competent to the state of New York to provide that upon the failure of a bank of circulation and deposit, the assets of the bank shall be applied first in payment of its circulating notes; and second, in payment of debts due to savings banks; and third, to creditors generally. It may deem this rule of distribution to be so important that it will incorporate it with its fundamental law, when it will be, to some extent, free from the effects of public excitement. It is still, however, but a law of no further effect than an ordinary statute, while both remain unrepealed or uncontradicted. The same language, in the same circumstance, will confer the same rights, neither more or

less, whether embodied in a state constitution or in a state statute. Such a law does not either by its language or upon principle give a lien or claim upon the funds of the insolvent corporation. They remain with the receiver or the assignee. The law simply directs to whom and to the payment of what debts the funds shall be applied by such receiver or assignee. The distribution of estates of insolvents under the state laws, and of the estates of intestates stands upon the same principle. I am not able to discern any difference between these cases and the one we are considering. In each instance the proceeding is taken by virtue of the state authority. The title to the property vests in the assignee, receiver, trustee, administrator, or by whatever name he may be called; the statute says that he shall apply it by giving a particular portion to the widow, and another portion to the children; or the statute directs that certain debts due to the state shall first be paid, and certain other debts shall be then paid. This is a rule of distribution and gives no interest in or lien upon the property in the hands of the trustee. As the result of this principle, the legislature may alter the theory of disposition at its pleasure, as often as it thinks fit and no rights are infringed. The statutes of 1853 and 1858, in my judgment, stand upon the same foundation; they give no lien upon or claim on the property in the hands of the receiver, and creditors are entitled to no other protection under them than are claimants under the other statutes referred to.

A brother of the half blood would to-day be entitled to an equal participation under the laws of New York in the estate of his deceased brother, should he now die, with a brother of the full blood. No one will argue, however, that he has any claim, interest in, or lien upon, the estate of his living brother that will prevent the legislature from passing a law that brothers of the full blood only shall inherit his inheritable. This heritable capacity is destroyed, but no lien or interest is effected if he had no interest in his brother's estate. So an after begotten child may by legislative action be cut off from the participation which the law now gives him to the estate of his father. It results, however, from a change of a rule of distribution merely. Neither the child, this brother, or the savings bank have any greater interest in the property than an expectation derived from an existing rule of distribution. The property, and all and every interest in it belongs to the owner thereof, if the rule of distribution remains unaltered. They would, in certain contingencies, receive a portion on final distribution; but if altered, as it may be at any time, they take nothing. Norris v. Crocker, 13 How. [54 U. S.] 429; Steamship Co. v. Joleffe, 2 Wall. [69 U. S.] 450, etc.; Bronson v. Kinzee, 1 How. [42 U. S.] 316.

The object no doubt of the law of 1853 was to give additional securities to savings banks. They are in the nature of charitable institutions, and it may be assumed that the legislature intended to give them a preference over other creditors of insolvent banking corporations. This they intended to do by providing the rule of distribution contained in that act. The operation of a bankrupt law was probably not in the mind of the persons decreeing the act of 1853. Such a law is exceptional in the history of this country. The bankrupt laws passed prior to 1853, had been temporary in their character, and their consideration did not enter into ordinary business arrangements.[3] It was assumed in the event of the insolvency of banking corporations that they would be wound up by the courts of the state, and by officers appointed by them. In such cases the statute offered ample protection to savings banks. The rule of distribution provided by it would save their preferences. It is upon this theory that both the legislature and the parties probably acted, and it can scarcely be said with accuracy that the parties relied upon the plighted faith that the assets of the bank were pledged for the repayment of this deposit. There is no reason in fact or in law to suppose the parties in this case understood themselves to have given or to have received a lien upon the property of the Stuyvesant Bank, or that they had a vested, or any other right, in its estate. They were aware of the provisions of the law in that respect. They knew that if this bank became insolvent, and was wound up under the laws as they then stood, their debts would have a preference. It is assumed that they contracted with reference to this, but to assume that they anticipated the passage of another bankrupt law, and provided to themselves a lien and pledge upon the assets of a bank then in prosperous condition, which would protect them as parties holding incumbrances, is quite unreasonable. We find nothing in the fact proved, or in the principles of law, to warrant this assumption.

The deposits of the savings banks in question it is proved were made in reference to the law of 1853, and upon an understanding that there were such provisions as are relied upon here. This is not in law a material circumstance; if it be assumed to amount to an agreement, that, in case of the occurrence of the insolvency of the Stuyvesant Bank, the savings bank should have a preference over other creditors in payment of its debts, it would not avail. Such an agreement is not valid. It would amount to nothing more. No present security was offered or expected. No advantage was to be received except upon in-

[3] The first act to establish a uniform system of bankruptcy was passed by congress April 4th, 1800, and was repealed on the 9th of December, 1803 (2 Stat. 19, 248).
The second act by the United States authority to establish a system of bankruptcy was passed August 19th, 1843 (5 Stat. 440, 614).
In the year 1853, when the New York statute we are considering was passed by the legislature of that state, no bankruptcy system under the authority of the United States was in existence, nor had there been for ten years previously, nor was there until sixteen years afterwards.

solvency. If the Stuyvesant Bank should become insolvent the statute provided for a preference, the understanding or expectation went to that point only. If there was an agreement it could only be to the effect that the law did and should continue to give them a preference. The bankrupt law could not exist a moment under the rule that the debtor could by such an agreement give a preference on his assets, and an agreement of this character is contrary to its entire spirit and purpose, and will at once destroy its effect. By the statutes of New York a banking corporation cannot give a preference in contemplation of insolvency. 2 Rev. St. (5th Ed.) p. 517, § 1.

It can hardly be assumed that they intended by implication to authorize a lien and charge which would fix such preference beyond their own power of change.

Holding that the appellant had no lien upon the funds in the possession of the Stuyvesant Bank, it is clear that the appeal must be dismissed, and within the bankrupt act the appellant is an ordinary creditor, and takes its chance with others to receive its distributive share without preference or advantage. The order of the district court of January 31st, 1874, is affirmed.

___

SIXTEEN BARRELS OF DISTILLED SPIRITS (UNITED STATES v.). See Case No. 16,300.

SIXTEEN CASES OF SILK RIBBONS (UNITED STATES v.). See Case No. 16,-301.

SIXTEEN HOGSHEADS OF TOBACCO (UNITED STATES v.). See Case No. 16,-302.

SIXTEEN PACKAGES (UNITED STATES v.). See Case No. 16,303.

SIX THOUSAND TWO HUNDRED AND FIFTY CIGARS (UNITED STATES v.). See Case No. 16,304.

SIXTY FIVE–EIGHTHS CARATS BRILLIANTS (UNITED STATES v.). See Case No. 16,305.

SIXTY–FOUR BARRELS DISTILLED SPIRITS (UNITED STATES v.). See Case No. 16,306.

S I X T Y – N I N E BARRELS (UNITED STATES v.). See Case No. 16,307.