[ Decided January 28, 1895.]

## RE ASSIGNMENT OF HAMILTON.

### AVERY *v.* LADD.

[S. C. 38 Pac. Rep. 1088.]

1. RECEIVER'S RIGHTS TO ASSETS OF INSOLVENT—SET-OFF.*—Upon a receiver's appointment, the debtor's choses in action pass to him, subject to the equitable right of set-off then existing against the debtor.

* A number of authorities in support of this rule, as applied to both receivers and assignees, are collected in a note to the Massachusetts case of *Merrill* v. *Cape Ann Granite Company*, 23 L. R. A. 313, showing also the limitations on the rule.

2. SET-OFF AGAINST RECEIVER.* — A debtor of a suspended bank, acquiring a check thereon with knowledge of the suspension, cannot set off the amount thereof against his debt, though he acquire the check before a receiver for the bank is appointed.

3. RECEIVER — EQUITABLE ASSIGNMENT.— An order appointing a receiver to take charge of the firm assets, in an action to dissolve a partnership, and providing for the collection of debts due the firm, and the application of the proceeds to the payment of its liabilities, operates as an equitable assignment for the benefit of the firm's creditors, and the receiver has a lien thereon from the time of his appointment— in short, the property is in *custodia legis* for the benefit of such persons as shall show themselves entitled to it.

4. RECEIVER — ASSIGNEE — MERGER — SET-OFF.—The fact that a bank, after the appointment of a receiver for it, assigns for the benefit of its creditors, does not discharge the lien in favor of all its creditors which attached to its assets upon the receiver's appointment, so as to permit a debtor of the bank to set off against his debt the amount of a check on the bank acquired by him after the appointment of the receiver, but before the assignment. On the contrary, the equitable interest acquired in the assets of an insolvent firm by a receiver appointed in an action for their distribution merges into a legal lien for the benefit of creditors upon the discharge of the receiver and the appointment of an assignee for the benefit of creditors; and debtors of the insolvent firm do not acquire by such appointment any right of offset on account of claims as to which such right did not exist against the receiver.

APPEAL from Benton: J. C. FULLERTON, Judge.

This is an appeal from a judgment substaining objections to and rejecting the several offsets claimed by the appellants against their several debts due the firm of Hamilton, Job & Company. The cause was tried upon an agreed statement of facts, from which it appears that up to and for some time prior to June tenth, eighteen

* It seems to be generally agreed that no set-off will be allowed against an insolvent estate of a claim purchased after the estate has passed out of the insolvent's possession, whether taken from him by his own voluntary assignment or by some legal proceedings. There is, however, a difference of opinion as to the act which fixes the rights of the parties so that no claim procured thereafter can be set off. Some cases hold that any claim procured prior to the institution of judicial proceedings or the execution of an assignment may be set off, while others hold that knowledge of the insolvency is sufficient to prevent claims thereafter acquired from being so used. See a note to the Michigan case of *Stone* v. *Dodge*, 21 L. R. A. 280. See also *Davis* v. *Indus-*

hundred and ninety-three, B. R. Job and Zephin Job were partners, engaged in the general banking business at Corvallis, Oregon, under the firm name of Hamilton, Job & Company; that on said day they failed to open their bank for business, and posted a notice on the door thereof to the effect that, owing to the withdrawal of deposits, they were compelled to suspend payment; and at the same time B. R. Job commenced a suit against Zephin Job for the dissolution of said partnership, alleging in his complaint the suspension of their bank, and their inability to continue the business, and praying the appointment of a receiver to take charge of their assets, collect the debts due the firm, apply the proceeds to the payment of their liabilities, wind up their affairs, and divide the surplus, if any, among the partners as their respective interests might appear upon an accounting; whereupon the court on said day made an order appointing J. R. Bryson receiver, and instructing him to proceed as prayed for in the complaint; and said officer having duly qualified entered upon the discharge of his duties. It also appears that after the appointment of the receiver, the property and assets of said firm having been attached in an action brought by the State Agricultural College, to secure the payment of seventeen thousand six hundred and sixty-four dollars and seventy-four cents due it, the said B. R. and Zephin Job, as such partners, on the nineteenth of said month, at the request of a majority of their creditors, made a general assignment to said J. R. Bryson, who accepted the trust and duly qualified as assignee; that three

trial Manufacturing Company (N. C.), 23 L. R. A. 322, where it is stated that the receiver of an insolvent bank, in settling with a creditor, should deduct from his credit all those sums for which he is debtor, whether as principal or surety, and whether his liability has matured or not; and in settling with a debtor to the bank the receiver should allow him credit for all sums which the bank owed him when the receiver was appointed, whether the debts were then due or not. The following cases review in the notes many phases of the question : *Bradley* v. *Thompson Smith's Sons*, 23 L. R. A. 305 ; *Vann* v. *Marburg*, 23 L. R. A. 325 ; *Adams* v. *Spokane Drug Company*, 23 L. R. A. 334, 57 Fed. 888; *Benson* v. *Haywood*, 23 L. R. A. 335.

days thereafter the court made an order directing said Bryson to proceed under the assignment, instead of the receivership, in the administration of the said estate, and as such receiver to surrender to himself as assignee all the property and assets of said firm in his possession, and that further proceedings under the receivership in respect to the partnership assets be suspended until a final settlement by the assignee, or the further order of the court; that upon the usual notice to creditors being given by the assignee, numerous claims against said estate were presented for allowance, and, among others, the following were sought to be offset against their respective debts, to wit: J. M. Applewhite, being indebted in the sum of eighty-seven dollars and fifteen cents, tendered the check of J. C. Applewhite, drawn upon said firm in his favor, June tenth, eighteen hundred and ninety-three, for one hundred dollars; P. Avery, being indebted in the sum of one hundred and fifty dollars, offered the check of the Benton County Flouring Mills Company, drawn the same day upon said firm in his favor, for one hundred and forty-nine dollars and thirty cents; John Smith, being indebted in the sum of two thousand dollars, presented a certificate of deposit issued by said firm to said Benton County Flouring Mills Company for four thousand dollars, and duly assigned to him June fifteenth, and also a draft issued by said firm upon Messrs. Ladd & Tilton, bankers at Portland, Oregon, for forty-four dollars and ninety cents, and duly assigned to him after the appointment of said receiver. It also appears that the said checks issued to J. M. Applewhite and P. Avery were given to and received by them subsequent to the closing of said bank, with knowledge thereof, and could not therefore have been presented for payment prior thereto; that the estates of Hamilton, Job & Company, and of said B. R. Job and Zephin Job, at all times since June tenth, eighteen hundred and ninety-three, have been and are

wholly insufficient to pay the debts of said partnership; that William M. Ladd, Charles E. Ladd, and John Wesley Ladd, trustees under the last will and testament of W. S. Ladd, deceased, being creditors of said insolvent estate, and having presented their claim for allowance to the assignee within the time required by law, filed objections to the allowance of the foregoing claims of set-off, and the court at the hearing thereof sustained said objections, and rendered judgment rejecting the several claims so objected to, from which judgment all the claimants appeal.

AFFIRMED.

For appellants there were printed briefs by *Messrs. W. S. McFadden, John Kelsay, Whalley, Strahan & Pipes,* and *John Burnett,* and oral arguments by *Mr. John W. Whalley* and *Mr. Kelsay.*

For respondents there was a brief by *Messrs. Williams, Wood,* and *Linthicum,* and an oral argument by *Mr. J. Couch Flanders.*

Opinion by MR. JUSTICE MOORE.

1.   The record discloses that J. R. Bryson was appointed receiver at about three o'clock in the afternoon of June tenth, eighteen hundred and ninety-three, and that P. Avery received his check, drawn that day upon Hamilton, Job & Company, before that hour, but that he accepted it with knowledge that their bank had suspended payment, and the question is presented as to whether Avery is entitled to offset the said check against his debt. The rule appears to be well settled that an equitable interest in an insolvent debtor's estate is vested in a receiver by his appointment, and that he takes the assets of the debtor as a trust fund for the equal benefit of all the creditors of the estate.   The receiver can acquire no greater

interest than the debtor had in the estate, and hence choses in action pass to the receiver subject to the equitable right of set-off existing at the time of his appointment: *Colt* v. *Brown*, 12 Gray, 233; *Hade* v. *McVay*, 21 Ohio St. 231; *State Bank* v. *Bank of New Brunswick*, 3 N. J. Eq. 266. When a receiver is appointed the accounts of the insolvent debtor are closed, and no changes can thereafter be made by any assignment of credits against the estate, as this, if allowed, would injure the trust fund, and defeat the ratable distribution to which each creditor is entitled: *Jackson* v. *Lahee*, 114 Ill. 300, 2 N. E. 172; *Clarke* v. *Hawkins*, 5 R. I. 219; *Van Dyck* v. *McQuade*, 85 N. Y. 617.

2. In *Northampton Bank* v. *Balliet*, 8 Watts & S. 311, 42 Am. Dec. 297, it was held that "the important period to determine the right of the assignee and the defendants is not the time of the assignment, but the time the defendants had notice of it, and this principle applies as well in the case of set-off as payment." This would seem to imply that the debtor of an insolvent might, until he had received notice of the insolvency, acquire claims against the insolvent estate to offset his indebtedness, upon the theory that he was an innocent purchaser, for a valuable consideration, without notice. Applying this rule to the facts in the case at bar, Avery could not be an innocent purchaser, because when he acquired the check he had knowledge of the suspension, and hence is not entitled to the offset claimed, though in fact he had the check a few hours before the appointment of the receiver. The other claimants are even less favorably situated, as they not only obtained their checks with knowledge of the suspension of said bank, but presumably after the appointment of the receiver, and are therefore not entitled to offset them against their several debts.

3. The appointment of a receiver in a suit to dissolve a partnership, does not, of necessity, preclude its debtors

from acquiring claims against it with which to offset their indebtedness.  If the partners are solvent, their creditors are not bound to wait until the equities between their debtors have been adjusted.  The assets in such cases are treated as still belonging to the firm, and subject, in the ordinary method, to the payment of the partnership debts. If the rule were otherwise, partners embarrassed by the scarcity of money, depression in business, or injury to their credit, could commence a suit to dissolve the partnership, and, by securing the appointment of a receiver, continue their business through him as their agent until ready to meet their obligations, when, by dismissing the suit, the receiver would be discharged, and they could resume business "at the old stand."  Equity will not sanction or tolerate such a rule, or permit a solvent firm to plead the appointment of a receiver in bar or abatement of an action for money due, when the real object sought by the appointment of the receiver is to settle the private differences of its members, or to hinder, delay, or defraud creditors.  But in a suit to dissolve a partnership, and for the appointment of a receiver, when the order of the court making the appointment shows that it was done for the purpose of distributing the assets among the creditors, it must be treated as an equitable assignment for their benefit: *Jackson* v. *Lahee*, 114 Ill. 300, 2 N. E. 172; *Ellicott* v. *United States Insurance Company*, 7 Gill (Md.), 307; *Holmes* v. *McDowell*, 76 N. Y. 596.  The order of the court in the case at bar appointing the receiver provided for the collection of the firm debts, and the application of the proceeds thereof to the payment of its liabilities, and hence must be treated as an equitable assignment for the benefit of the creditors.  The receiver,—being an officer of the court,—having taken possession of the property of the firm, a lien attached thereto in his favor, and the court

26 OR.—74.

through him became its custodian for the benefit of all the creditors, and while this property remained *in custodia legis* it was impossible for any creditor to acquire a lien thereon, or in any manner secure a preference over the other creditors, and, in the absence of any statement of fact, it is difficult to ascertain how an attachment could have been levied upon the assets in the hands of the receiver.

4.   It is contended that the assignment made by Hamilton, Job & Company, discharged the equitable lien upon the assets of said firm created by the appointment of the receiver, and that the several appellants, having acquired their credits prior to the assignment, may offset them against their respective debts; and in support of this contention the appellants insist that the appointment of a receiver constituted an equitable attachment (Bump's Bankruptcy [8th ed.], 489, 490), and that, no judgment having been rendered therein, the lien created by the appointment of the receiver was discharged by the assignment of the debtors for the benefit of their creditors: Hill's Code, § 3173.   The manifest object of this section of the statute is to place the assets of the insolvent debtor in the hands of the assignee for the benefit of all the creditors in proportion to their respective claims, and to prevent any creditor from acquiring a lien upon the debtor's property, or the fund arising from its sale.   If the appointment of the receiver creating an equitable lien upon the assets of the firm had been for the benefit of a favored few, there would be just reason for holding that the assignment discharged such equitable lien; but when it is remembered that the receiver took an equitable interest in the assets as a trust fund for the benefit of all the creditors, and that the assignee now holds the legal title thereto for the same purpose and persons, we see no just reason for holding that the receiver's lien was discharged by the appoint-

ment of the assignee, when the only effect of the proceeding was to merge an equitable into a legal lien for the benefit of all the creditors. All the creditors, under the receivership, had an equitable lien upon the assets of the firm, and under the assignment they have a legal lien upon the fund arising from the sale thereof. To admit that the equitable lien was discharged by the assignment, and that the appellants, having acquired their claims against the insolvent's estate subsequent to the appointment of the receiver, but prior to the assignment, could thereby offset them against their debts would be to give the statute a construction never contemplated, and contrary to its manifest object. To adopt the appellants' construction would be equivalent to holding that they had acquired a lien upon the fund, or the right to offset their claims against their debts, in spite of the statute which provides that such fund must be preserved for the benefit of all the creditors. There being no error in the judgment it follows that it must be affirmed, and it is so ordered.

AFFIRMED.