Argued July 8, decrees affirmed July 29, rehearing denied November 21, 1922.

## UPHAM ET AL. *v.* BRAMWELL.

(209 Pac. 100; 210 Pac. 706.)

**Banks and Banking—Savings Depositors have First Lien on Assets of Savings Department of Insolvent Bank and also Share Ratably in Other Assets.**

1. Under Section 6220, Or. L., amended by Laws of 1921, page 596, in case of insolvency of any bank with a savings department, the savings depositors have a first lien on assets of the savings department, and also share ratably with commercial depositors in the distribution of all other assets and resources of the bank.

**Statutes—Subtitle, Adopted by Compiler, has No Legislative Force.**

2. A subtitle adopted by the compiler as a reference aid to users of the Code has no legislative force, and merely expresses the compiler's opinion.

**Banks and Banking—Savings Depositor may Offset Deposit Against Debt.**

3. The rule that a depositor of an insolvent bank may offset his deposit against his indebtedness to the bank applies to depositors in the savings department of an insolvent bank, where such depositors have no interest in the profits of the bank and are not liable for its losses.

**Corporations—Office of Trust Fund Doctrine Stated and Application Determined.**

4. The principal office of the trust fund doctrine is to preserve the assets of a corporation as a fund for the payment of the corporate debts when such assets or some part thereof have been wrongfully diverted by the officers and agents of the corporation, and it does not apply where all the assets are within the control of the court and are being administered for creditors exclusive of stockholders.

**Banks and Banking — Banking Act Provides Rules of Priority Among Creditors of Insolvent Banks.**

5. Section 6220, Or. L., as amended by Laws of 1921, page 596, does not create a lien in favor of depositors in the sense that it gives a vested right or interest in assets, but provides rules of distribution and priority among creditors respecting the assets of insolvent banks.

**Banks and Banking—Depositor has Right of Setoff Against Insolvent Bank—Allowance of Depositor's Claim Equivalent to Judgment.**

6. The contention that depositor cannot set off his· deposit against his indebtedness to an insolvent bank because a depositor cannot sue the superintendent of banks or the bank, both being under the court's supervision, and obtain a several judgment on his claim, a condition of counterclaim under Section 74, Or. L., is without merit, as, where the claim of a depositor is allowed by the superintendent of banks, with the court's approval, such allowance is equivalent to judgment, and action upon a rejected claim is authorized by Section 6223.

**Banks and Banking — To Entitle Plaintiff to Attorney Fees in Action Against Superintendent of Banks, Extent of Advantage to Depositors from Suit must be Shown.**

7. In an action against the superintendent of banks on behalf of plaintiff and all other depositors, of an insolvent bank, in which plaintiff asked for $5,000 as costs, disbursements, and counsel fees to be allowed out of the assets of the bank, before the court was authorized to allow the counsel fees it was necessary for plaintiff to introduce some evidence to establish the extent of the advantage, if any, accruing to the depositors as the result of ·the services rendered, together with evidence of the reasonable value of such services.

---

3. On right to set off insolvent's obligation upon a claim in the hands of his receiver, or assignee, or trustee for creditors, see notes in 47 **Am. St. Rep.** 142; 23 **L. R. A.** 313.

**Banks and Banking—To Entitle Plaintiff to Costs and Attorney Fees for Services Rendered Other Depositors of Insolvent Bank, Services must have Been Necessary.**

8. In an action against the superintendent of banks by a depositor of an insolvent bank, brought on behalf of plaintiff for himself and other depositors, in which plaintiff asked costs, disbursements, and attorney fees to be allowed out of the assets, to authorize such allowance the services rendered must have been necessary.

**Banks and Banking — Where Litigation as to Distribution of Insolvent Bank's Assets Unnecessary, No Attorney Fees Allowed in Suit Against Superintendent of Banks.**

9. Where at the time a suit was filed against the superintendent of banks he had not declared a dividend or paid the creditors any of the funds of the bank, but merely declared that he intended to distribute the funds in a certain way, in view of Section 6223, Or. L., requiring that the superintendent of banks should proceed to liquidate the affairs of the insolvent bank under order of court, and it not appearing that expensive litigation was necessary to secure a correct order of distribution, plaintiff was not entitled to costs, disbursements and attorney's fees.

## ON PETITION FOR REHEARING.

**Statutes—Title of Act Regulating State Banks Held to Contain but One Subject.**

10. All of the details contained in the title of Laws of 1907, page 262, relate to the same subject, and together constitute but one general subject, which is the regulation of state banks.

**Banks and Banking—Constitutional Law—Act Granting Savings Depositors a Preference in the Distribution of Assets of Insolvent Bank not a Denial of Due Process.**

11. Laws of 1907, page 262, and amendments thereto, giving to savings depositors a preference in the distribution of the assets of an insolvent state bank, does not authorize the taking of the property of commercial depositors without due process of law, in violation of Constitution of United States Amendments 5 and 14.

**Banks and Banking—No Repugnancy Between Subdivisions of Act Giving Depositors a Prior Claim in Case of Insolvency or Liquidation.**

12. No irreconcilable repugnancy exists between Section 6220, subdivision (e), Or. L., providing that, in case of insolvency or liquidation of a state bank, the savings depositors shall have an exclusive prior lien upon the assets of the savings department, and subdivision (h), providing that, in case of insolvency or liquidation of a state bank, the depositors shall have a prior lien on all the assets of the bank.

**Banks and Banking—Commercial Depositor cannot Set Off His Deposit Against His Debt to the Savings Department.**

13. Under Section 6220, Or. L., providing that all of the assets of the savings department shall be held solely for the repayment of the savings depositors, and shall not be used to pay any other obligation or liability of the bank until after such depositors are paid, a commercial depositor cannot set off his deposit against his

debt to the savings department, but a savings deposit may be offset by debt to the savings department or to the commercial department, and a commercial deposit may be offset by a debt to the commercial department.

**Banks and Banking—Savings Assets Chargeable With Expenses of Liquidating Insolvent Bank.**

14. Under Section 6220, Or. L., providing that the assets of the savings department shall be held solely for the repayment of the savings depositors, the savings assets are chargeable with a just and equitable part of the expenses of liquidating the insolvent bank.

**Banks and Banking—Savings Depositors shall Share Ratably With Other Depositors General Assets Where Savings Assets are Insufficient.**

15. Under Section 6220, Or. L., providing that, in case of insolvency or liquidation, the savings depositors shall have a prior lien upon the savings assets of the bank, the savings depositors have the right, where the savings assets are insufficient to pay the savings depositors in full, to share ratably with the other depositors in the general assets upon the basis of their unpaid balances after distribution of savings assets.

**Banks and Banking—Court Without Power to Allow Attorney's Fees to Depositor Suing to Establish Claim to Assets of Insolvent Bank.**

16. A court which is administering the funds of an insolvent bank is without power to allow costs and attorney's fees payable out of the fund for services performed by a depositor in establishing, in suit against the superintendent of banks, that he and all other depositors of his class are entitled to participate in the distribution of that fund.

From Multnomah: ROBERT TUCKER, Judge.

In Banc.

DECREES AFFIRMED.

For appellant there was a brief over the name of *Messrs. Bowerman & Kavanaugh,* with an oral argument by *Mr. John P. Kavanaugh.*

For respondent there was a brief and oral argument by *Mr. John W. Kaste.*

McCOURT, J.—On February 16, 1922, the State Bank of Portland, Oregon, a state bank, was insolvent, and upon that date was, by its officers and directors, placed in the possession of the defendant,

as superintendent of banks, to administer its affairs and liquidate its assets in conformity with the statutes governing the liquidation of insolvent state banks. Prior to its insolvency the bank conducted a commercial banking business and also maintained a savings department established in the manner prescribed by statute.

Defendant has converted a part of the assets of the insolvent bank into cash; about one half of the sum in the hands of defendant was realized from the assets of the savings department and the remaining half from other assets of the bank. Defendant was about to declare, distribute and pay a dividend to each of the depositors of the bank whose claim had been proved and allowed, when these suits were brought by creditors, each having deposits in the bank, two of them in the savings department, for the purpose of securing from the Circuit Court directions to defendant in the distribution of the assets of the bank. Each suit was instituted in behalf of the respective plaintiff named therein and all other depositors of the bank similarly situated.

In liquidating the affairs of the bank and distributing its assets, the defendant proposed to allow depositors who were also indebted to the bank, each to offset his deposit against his debt due to the bank, and defendant, in declaring, distributing and paying dividends, proposed to pay to the savings depositors of the bank ratably only such moneys as had been realized from the liquidation of the assets of the savings department of the bank, and to pay to the commercial depositors of the bank ratably all moneys realized from the liquidation of all other assets and resources of the bank.

In the suit of *C. R. Upham* v. *Frank C. Bramwell,* the plaintiff is a depositor, but it does not appear

whether in the commercial or savings department of the bank; plaintiff seeks to enjoin the defendant from allowing offsets of any kind to depositors who are debtors of the insolvent bank and to require the defendant to collect the full amount of all debts due the bank from depositors, and then permit such debtor depositors to file their claims for the full amount of their deposits. The defendant interposed a demurrer to the complaint, which was sustained. Plaintiff refused to plead further, and a decree was entered dismissing the suit. Plaintiff appeals.

In the case of *Grace Doxsie* v. *Frank C. Bramwell,* plaintiff is a depositor in the savings department; plaintiff claims that the savings depositors of the insolvent bank have a first lien on all of the assets of the bank for the satisfaction of their claims, and that such savings depositors are entitled to be paid in full out of the proceeds realized from the liquidation of said assets before any other creditors of the bank, including commercial depositors, shall receive any dividend upon their claims. The Circuit Court sustained a demurrer to the complaint in this suit, and upon refusal of the plaintiff to plead further, entered a decree dismissing the suit. Plaintiff appeals.

In the suit of *Mary Steelhammer* v. *Frank C. Bramwell,* the plaintiff presented the contention that all the savings depositors of the bank are entitled to have all of the assets of the savings department when liquidated, less the cost of such liquidation, applied exclusively upon and in payment of their respective claims, and are also further entitled from time to time, as dividends are declared, to share *pro rata* with the other depositors of the bank in the funds realized from the liquidation of the other assets and resources of the bank, until their respective claims, as such depositors, have been fully paid, or the assets

exhausted. Defendant demurred to the complaint in this suit. The demurrer was overruled, and a decree entered in accordance with the prayer of plaintiff's complaint. Defendant has appealed from that decree.

These appeals for convenience were heard together, and for like reasons will be disposed of in one opinion.

The questions presented are affected by Section 6220, Or. L., as amended by Chapter 317, Laws of 1921. That section contains eight subdivisions, (a) to (h) inclusive. At the head of each subsection is a title, placed there by the compilers of the 1920 Codes, and not found in the section as enacted by the legislature, Chapter 171, Laws of 1911; Chapter 285, Laws of 1915, Section 11, subdivision (a), sets forth the procedure to be pursued by a state bank for establishing a savings department. Subdivision (b) requires the issuance to savings depositors of pass books containing the rules and regulations governing such deposits. Subdivision (c) is as follows:

"(c) BOOKS AND ACCOUNTS TO BE KEPT SEPARATE; SECURITIES.—Any bank combining any of the business of a commercial bank, trust company and savings bank shall keep separate books or accounts for each department, and shall keep all moneys received as such savings deposits, and the funds and securities in which the same are invested, at all times segregated from and unmingled with the other moneys and funds of the bank, and all bonds, warrants, notes, mortgages, deeds and other securities of every nature of such savings department shall be marked, stamped or labeled 'savings department' or some similar words. *All funds, investments and other assets of the savings department shall be held solely for the repayment of the depositors in said department and shall not be liable for, pledged as security for, or used to pay any other obligation or liability of the bank until after the payment in full of all depositors of said savings department.*"

Subdivision (d) describes the securities in which savings deposits may be invested, provided the reserve required by Section 6209, Or. L., shall be maintained. Subdivision (e) permits the requirement that depositors before withdrawing savings deposits, shall give notice of from thirty days to six months, depending upon the amount to be withdrawn, and further provides:

"In the case of the insolvency or liquidation of any bank which shall establish or maintain a savings department, under the terms of this section, the savings depositors shall have an exclusive prior lien upon all the assets, including cash, of such savings department, [and lien upon all the assets, including cash, of such savings department,] and which shall first be paid, and the remainder, after they have been paid in full, shall be applied to the payment of the claims of the other creditors of said bank." Note: The matter in brackets is repetition.

Subdivision (f) authorizes the payment of interest on savings deposits and directs that such interest be paid out of the commercial department, if the earnings on savings deposits are insufficient to pay the same; also authorizes at any dividend period the transfer of the net accumulated and collected earnings of the savings department to the profits account of the bank. Subdivision (g) prescribes a penalty for each failure to observe the requirement of the statute that the accounts and funds of the savings department shall be kept separate and identified. Subdivision (h) reads:

"(h) SAVINGS DEPOSITS HAVE FIRST LIEN ON ASSETS. In the event of the insolvency or bankruptcy of any state bank doing business within the meaning of this act, depositors of such bank shall have a first and prior lien on all the assets of such bank; and in the distribution of such assets or the proceeds thereof, the same shall be first applied to satisfy the amount

due such depositors after the payment of expenses of liquidation of any such bank; provided, however, that this section shall not apply to assets pledged as collateral security for money borrowed.''

The parties are agreed that the statute requires that the assets of the savings department shall be applied exclusively to the payment of the claims of the savings depositors, until such claims are paid in full, or such assets are exhausted, but they differ as to the construction of subdivision (h) of the section.

Plaintiff Doxsie contends that the provisions of Section 6220, Or. L., as amended by Chapter 317, Laws of 1921, including subdivision (h), relate exclusively to savings banks and savings departments of state banks and the depositors therein; that such is the purport of the statute, it is said, is clearly shown by the subject matter of the section, together with the title placed upon subdivision (h) by the compilers of the Codes (Olson, 1920). Plaintiff Steelhammer contends that the subdivision embraces all depositors of state banks, and entitles savings depositors, after the savings assets are exhausted, to share ratably with other depositors in the distribution of all other assets and resources of the bank. Defendant insists that subdivision (h), above set out, refers to the commercial depositors of a state bank, and excludes savings depositors from the benefit of its provisions; that it grants to commercial depositors of an insolvent state bank, in the distribution of all the assets of the bank other than assets of the savings department, a preference over all other creditors, including savings depositors. In support of this contention, defendant refers to the first statute of this state regulating banks and banking, Chapter 138, Laws of 1907, Section 38 of which, it is claimed, accorded commercial depositors the preference. mentioned; defendant asserts that the substance of the original section, grant-

ing and intending to grant that preference, was re-enacted in all subsequent amendments.

1. Leaving out of consideration the title given it in the Code, the plain import of the language of subdivision (h), above set out, authorizes distribution of the assets of an insolvent bank in conformity to the contentions of the plaintiff Steelhammer, that is, that the savings assets shall be applied exclusively to the satisfaction of the savings depositors, and until their claims are paid in full savings depositors shall share ratably with commercial depositors in the distribution of all other assets and resources of the bank.

The first statute passed in this state concerning the organization and creation of state banks, and reg· ulating the business of banking, was enacted in 1907: Chapter 138, pp. 262–275, Laws of 1907. That act provided the requirements for engaging in the banking business, defined the terms "bank, "banker" and "doing a banking business"; authorized the establishment of savings-banks and banks having both commercial and savings departments, and required that where a bank had both a commercial and savings departments, that all of the capital, assets, funds, properties and investments of one department should be kept distinct from all other capital, assets, funds, properties and investments of the company: Sections 7, 8 and 9, Laws of 1907, pp. 263, 264.

Section 38 of that act provided:

"In the event of the insolvency or bankruptcy of any person, firm or corporation, maintaining, operating or conducting a bank *or a banking department,* or doing business within the meaning of this act, depositors of such bank or banking department shall have a first and prior lien on all the assets of such bank *or banking department,* and in the distribution of such assets or the proceeds thereof, the same shall

first be applied to satisfy the amount due such depositors; * * ."

The language and phraseology of the foregoing section was carried into all subsequent amendments of the section, with the important omission in all such amendments of the words we have italicized in the quotation.

The act of 1907 was made more specific and comprehensive by an amendment affecting most of its provisions enacted by the legislature: Chap. 171, Laws of 1911, pp. 225–256. Section 33 of the amendatory act amended Section 38 of the statute of 1907. As amended, the section contained two subdivisions, (a) and (b). Subdivision (a) consisted entirely of new matter not found in the section or act amended and embraced all the provisions now found in subdivisions (a) to (g), inclusive, of Section 6220, Or. L., as amended by Chapter 317, Laws of 1921, except the additional securities in which savings assets may be invested, specified in subsequent amendments. Subdivision (b) of the section referred to the matter contained in the section amended and was enacted in the identical language now found in subdivision (h), Section 6220, Or. L., as amended by Chapter 317, Laws of 1921, except that the title, which now introduces the subdivision, was absent.

The section was thereafter amended: Chap. 285, Laws of 1915; Chap. 317, Laws of 1921. But in each instance the only change made in the section specified additional securities in which funds of the savings department of a state bank might be invested.

In the amendment of 1915 the section was divided, as now, into eight subdivisions, designated (a) to (h). Subdivision (h) was identical with subdivision (b) of the amendment of 1911. In the 1920 codification of statutes by Judge Conrad P. Olson, the sec-

tion is designated 6220, Or. L. The compiler of the Code appended a title to each of the subdivisions of the section and placed upon subdivision (h), above mentioned, the title: "Savings Deposits Have First Lien on Assets." When the section was amended by Chapter 317, Laws of 1921, the title of the subdivision was copied into the amendment, but the title of the amendment expressly stated that the section was amended "by specifying additional securities in which savings deposits may be invested."

2. Nothing appears in the foregoing review of the legislation under consideration to aid the contention of plaintiff Doxsie that the subhead to subdivision (h) confines its provisions to savings depositors. The subtitle was adopted by the compiler as a reference aid to users of the Code. It has no legislative force, and at most merely expresses the individual opinion entertained by the compiler of the Code as to the reach of the provision.

The preference right given to depositors by Section 38, Chapter 138, Laws of 1907, was apparently limited to the assets of the department in which the deposit was made. That limitation, if it was in fact present in the act, was removed by the 1911 amendment, which omitted all matter calculated to create a distinction between depositors or to classify or prefer them in respect to the distribution of the general assets of an insolvent bank. The statute evinces a purpose to furnish greater security to savings depositors than to other depositors and to favor savings depositors over commercial depositors in the event of insolvency, to the extent of the savings assets.

The construction contended for by defendant would require the savings depositors to look to the assets of the savings department for the satisfaction of their

claims, subordinating them to the commercial depositors as to the remaining assets and resources of the bank. Thereby the commercial depositors in many, if not most, cases would realize a larger percentage of their several claims than would the savings depositors, thus defeating the manifest design of the law to favor savings depositors and safeguard their deposits. In a preceding part of that section of the statute it is declared that savings depositors shall have an exclusive prior lien upon all the assets, including cash, of the savings department, from which their claims shall first be paid. This language implies that savings depositors have other claims on the assets of an insolvent bank. What was implied in the preceding provision is expressed and defined in subdivision (h). There all depositors, including savings depositors, are authorized to share ratably in the distribution of all the assets and resources of the bank not set apart by the statute solely for the repayment of savings depositors.

The construction we place upon the statute is in harmony with the construction of analogous statutes by courts of last resort of other states: *Lippitt* v. *Thames Loan & Trust Co.,* 88 Conn. 185. (90 Atl. 369); *Peters* v. *Union Trust Co.,* 131 Mich. 322 (91 N. W. 273); *State* v. *Savings Bank,* 127 Iowa, 198 (103 N. W. 97); *Tabor* v. *Mullin,* 37 Colo. 399 (86 Pac. 1007).

A statute of Connecticut, Section 3482, provides that in case of the insolvency of a bank, the assets shall be appropriated after the payment of the charges and expenses of settling its affairs and retiring its circulatory notes, to payment of the claims of depositors who shall have priority over all other creditors. Another statute provides that the investments of savings deposits in banks receiving deposits as savings "shall be for the exclusive protection of the

105 Or.—39

depositors in said savings department and shall not be liable for or used to pay any other obligation or liability of said bank * * until after the payment of all of the deposits in said savings department.''

In *Lippitt* v. *Thames Loan & Trust Co., supra,* a case relating to an insolvent bank, the court said of the provision above quoted:

''Obviously this provision was intended to safeguard the savings department deposits of a bank or trust company by requiring: (1) That the investment of all such deposits shall be in the investments by law permitted deposits in savings-banks; (2) That the investments of such deposits shall be for the exclusive protection of the depositors in the savings department; and (3) that these investments shall be used to pay the savings department deposits before they can be used to pay any other liability of the bank or trust company. The purpose of the statute was to add to the protection of the savings department depositor and not to diminish that which he already had. He had, by the charter, a prior lien upon all of the assets of the company. He had the right to share ratably in the avails in the hands of the receiver in a certain order. Neither privilege was taken from him by this statute. Another protectory privilege was added to these. If the investments in the savings department should not suffice to pay the savings department depositor in full, the unpaid balance of his deposit was placed on a parity with all other deposits, and entitled, on distribution, to share ratably in the order prescribed by § 3482.''

A statute of Michigan provides in substance that any bank combining the business of a savings bank and a commercial bank shall keep separate books of each kind of business, and that all investments of the savings department shall be kept entirely separate and apart from the other business of the bank, and that ''the investments made with the funds de-

posited by savings depositors shall be held solely for
the payment of the depositors of said funds."

The court in the case of *Peters* v. *Union Trust Co.,
supra,* held that investments made of funds deposited
with the savings department should be held solely for
the benefit of the depositors of savings funds, "and
that, as to the excess of savings deposits over and
above these securities, the depositors should share
with the commercial creditors."

The statute of Iowa provides that upon the insol-
vency of a bank, the auditor may by proper proceed-
ings procure the appointment of a "receiver for such
bank and its affairs shall be wound up under the
direction of the court, and the assets thereof ratably
distributed among the creditors thereof giving pref-
erence in payment to depositors."

In the case of *State* v. *Savings Bank, supra,* the
court affirmed the decision of the district court, "that
under the statute the depositors in the insolvent bank
are preferred creditors, who, after payment of costs
and expenses, are entitled to be first paid in full from
the assets in the hands of the receiver, exclusive of
the sum or amount realized from the statutory assess-
ment upon the stockholders, and that the proceeds of
such assessment be ratably distributed to all cred-
itors, including depositors."

3. The right of defendant to allow a depositor to
set off his deposit against his indebtedness to the
bank is supported by the great weight of authority:
3 R. C. L. 647; 14 R. C. L. 655; 14A C. J. 1034; 1
Michie Banks & Banking, 634, 635; 1 Morse on Banks
and Banking (3 ed.), 553; *Re Assignment of Hamil-
ton,* 26 Or. 579 (38 Pac. 1088); *Scott* v. *Armstrong,*
146 U. S. 449 (36 L. Ed. 1059, 13 Sup. Ct. Rep. 148,
see, also, Rose's U. S. Notes); *Yardley* v. *Clothier,*

51 Fed. 506 (17 L. R. A. 462, 2 C. C. A. 349); *Van Wagoner* v. *Patterson Gas & Light Co.,* 23 N. J. Law, 283; *State* v. *Brobston,* 94 Ga. 95 (47 Am. St. Rep. 138, 21 S. E. 146); *Citizens' Bank* v. *Kretschmar,* 91 Miss. 608 (44 South. 930); *Williams* v. *Johnson,* 50 Mont. 7 (144 Pac. 768, Ann. Cas. 1916D, 595, and note); *Williams* v. *Burgess,* 74 W. Va. 623 (82 S. E. 507, Ann. Cas. 1917C, 1185, and note); *Merrill* v. *Cape Ann. Granite Co.,* 161 Mass. 212 (36 N. E. 797, 23 L. R. A. 313 and note).

In the case of *Re Assignment of Hamilton, supra,* involving an insolvent bank, for which a receiver had been appointed, Mr. Justice MOORE, speaking for the court, said:

"The rule appears to be well settled that an an equitable interest in an insolvent debtor's estate is vested in a receiver by his appointment, and that he takes the assets of the debtor as a trust fund for the equal benefit of all the creditors of the estate. The receiver can acquire no greater interest than the debtor had in the estate, and hence choses in action pass to the receiver subject to the equitable right of setoff existing at the time of his appointment."

Plaintiff Upham claims that insolvent savings banks are excepted from the rules established by the foregoing authorities for the allowance of offsets against insolvent estates: *Osborn* v. *Byrne,* 43 Conn. 155 (21 Am. Rep. 641); *Lippitt* v. *Thames Loan & Trust Co., supra; Stockton* v. *Mechanics' Bank,* 32 N. J. Eq. 63; *Bachrach* v. *Allen* (Mass.), 131 N. E. 857. In all of these cases the savings bank was conducted by the depositors upon the mutual plan or by a corporation acting as their agent or trustee. In each instance the depositors all had a common interest in the invested savings funds and each was entitled to his proportionate share of the profits. In

the case of the defunct bank, the affairs of which defendant is administering, the relation of debtor and creditor existed between the savings depositors and the bank. Savings depositors had no interest in the profits of the bank and were not liable for its losses, and the rules relating to the setoff of mutual demands upon insolvency apply: *Williams* v. *Johnson,* 50 Mont. 7 (Ann. Cas. 1916D, 595, 144 Pac. 768).

4. Plaintiff Upham further contends that the recognition by this court of the trust fund doctrine as to the assets of an insolvent corporation that has ceased to do business, and the provisions of the statute purporting to give to savings depositors an "exclusive prior lien" upon the savings assets and to all depositors a "first and prior lien" upon the assets of the corporation, prevent the operation in this state of the rules governing offsets. Here all of the assets of the corporation are within the control of the Circuit Court and are being administered as a trust fund for the benefit of the creditors, exclusive of stockholders; no suggestion is made of diverted or concealed assets that should be covered into the fund. The trust fund doctrine alluded to has no application in such a case. Its principal office is to preserve the assets of a corporation as a fund for the payment of the corporate debts, when such assets or some part thereof have been wrongfully diverted by the officers and agents of the corporation.

5. The statute does not create a lien in favor of depositors in the sense that it gives a vested right or interest in such assets, but rather provides rules of distribution and priority among creditors respecting the assets of insolvent banks: *Sixpenny Savings Bank* v. *Stuyvesant Bank,* 22 Fed. Cas. 264 (No. 12,-919). The rules governing setoff apply to preferred creditors as well as those not preferred: *In re Ex-*

*celsior Mfg. Co. Assignment,* 164 Mo. 316, 329 (64 S. W. 133).

6. That a depositor cannot sue the defendant or the defunct bank, both being under the supervision of the court, and obtain a several judgment upon his claim (Section 74, Or. L.), is urged by plaintiff Upham as a further reason why the rules of setoff do not apply to the defunct bank. There is no merit in the contention. Where the claim of such a depositor is allowed by defendant, with the approval of the court, such allowance is equivalent to judgment: *Rockwell* v. *Portland Sav. Bank,* 31 Or. 431 (50 Pac. 566); *Baker* v. *Williams Banking Co.,* 42 Or. 213 (70 Pac. 711). Action upon a rejected claim is authorized by statute: Section 6223, Or. L. In any event, a depositor who possesses a valid claim against an insolvent bank, which claim has been rejected, has the right to commence an action for the recovery of judgment upon his claim, subject to the formality of obtaining an order from the court permitting him to institute the action.

7. Plaintiff Steelhammer prosecutes a cross appeal because of the failure of the Circuit Court to award plaintiff a reasonable counsel fee for instituting and prosecuting her suit. Plaintiff alleged in her complaint that there were over 7,500 savings depositors of the bank, representing a total of more than $1,000,000 in savings deposits; that it was impossible for all savings depositors to join in the suit, but that the decree to be obtained therein would inure to their special benefit and such depositors would receive the full amount of their respective claims, whereas if the defendant carried out his declared intention to confine the claims of savings depositors to savings assets until the commercial depositors were paid in full from the other assets of the bank, savings depositors

would receive not to exceed 75 per cent of their respective claims. Plaintiff prayed for the sum of $5,000 as costs, disbursements and counsel fees, to be allowed out of the assets of the savings department of the bank. Before the court was authorized to allow the counsel fees prayed for, it was necessary for plaintiff to introduce some evidence to establish the extent of the advantage, if any, accruing to savings depositors as the result of the services rendered, together with evidence of the reasonable value of such services. The record does not show that any such evidence was introduced or any offer made to introduce the same. This court, however, has power, in a proper case, to remand the cause to the Circuit Court for the purpose of taking such proceedings as are necessary to enable that court to determine a claim to an allowance of costs and counsel fees out of the fund.

"When a fund is brought into court through the service of an attorney, or where his services have added to or preserved or increased the amount being administered, the court of primary jurisdiction may properly allow a reasonable compensation for his services to be paid from the fund." *Ford* v. *Gilbert,* 44 Or. 259, 262 (75 Pac. 138).

The court denied the claim for counsel fees, and observed:

"They [the attorneys] did not recover a fund for the common benefit of the creditors, or add to the assets now being administered by the court."

8. In order to authorize an allowance for counsel fees and costs out of a fund, the services rendered must have been necessary: 15 C. J. 105; 7 R. C. L. 786.

In 15 C. J. 105, it is stated:

"Nevertheless to authorize the allowance the services rendered must have been necessary; also all the parties must have a common interest in the property or fund involved, and the costs incurred must have been for the profit of all having such interest."

To sustain the claim made for the allowance of counsel fees and costs from the fund in the hands of defendant, plaintiff cites numerous cases, among them the following: *Trustee* v. *Greenough,* 105 U. S. 527 (26 L. Ed. 1157, see, also, Rose's U. S. Notes); *Central R. R. Co.* v. *Pettus,* 113 U. S. 122 (28 L. Ed. 915, 5 Sup. Ct. Rep. 387); *Harrison* v. *Perea,* 168 U. S. 311 (42 L. Ed. 478, 118 Sup. Ct. Rep. 129).

In all of the cases cited by plaintiff, the party seeking an allowance of counsel fees and costs, had at his own expense either recovered and brought in the court a fund or property that otherwise would have been lost to the creditors or had instituted and prosecuted proper proceedings to save a trust fund already in court from destruction and to restore it to the purposes of the trust, none of which conditions are present in the instant case.

9. When the suit was commenced, the defendant had not declared any dividend or distributed or paid to creditors any of the funds of the defunct bank; defendant had merely declared that he intended to distribute the funds in a certain way. The court had given no decision and had expressed no opinion concerning the matter. The statute requires that the superintendent of banks shall proceed to liquidate the affairs of an insolvent bank under the order and direction of the Circuit Court in and for the judicial district in and for which the office of such bank was located, and that he—

"may, out of the funds remaining in his hands after the payment of expenses, declare one or more divi-

dends, and after the expiration of one year from the first publication of notice to creditors, he may declare a final dividend,—such dividends to be paid to such persons and in such amounts and upon such notice as may be directed by the circuit court * * .'' Section 6223, Or. L.

The court had not made, and had not been requested to make, any order concerning the dividends to be declared, distributed and paid to depositors from the assets in the hands of the defendant. It is not to be assumed that the court, either upon its own motion or upon the suggestion of defendant, would have authorized a distribution of the assets contrary to the requirements of the statute. The court promptly ordered distribution of the assets in accordance with plaintiff's contention, when application was made to it.

No controversy taking the form of litigation existed between savings depositors and other depositors of the bank. Plaintiff might have filed a petition in the suit brought by the defendant upon taking possession of the bank and thereby readily and in a summary manner secured an order upon the defendant, directing him to distribute the assets as plaintiff claimed they should be distributed and as the statute requires: *Wilde* v. *Oregon Trust & Savings Bank,* 59 Or. 551, 553 (117 Pac. 807); *Hafer* v. *Medford C. L. R. Co.,* 60 Or. 354, 358 (117 Pac. 1122, 119 Pac. 337).

It does not appear that expensive litigation was necessary to secure a correct order of distribution, and of course nothing was added to the funds and assets which were being administered under the direction of the court. We do not think this case comes within the rule established by the cited cases.

The decree of the Circuit Court in each of the cases is affirmed.                                        AFFIRMED.

BURNETT, C. J., took no part in the consideration or decision of this case.

---

Rehearing denied and former opinion modified November 21, 1922.

## ON PETITION FOR REHEARING.

(210 Pac. 706.)

*Mr. John W. Kaste,* for the petition.

*Messrs. Bowerman & Kavanaugh,* for respondent and appellant Frank C. Bramwell.

*Mr. J. Leroy Smith, Mr. H. A. Robertson, Mr. Elmer R. Lundburg, Mr. Homer St. Goehler, Mr. Herbert R. Dewart* and *Mr. Frank C. Dick, Amici Curiae.*

McCOURT, J.—J. Leroy Smith and four other attorneys of this court, designating themselves *amici curiae,* but who represent a number of the commercial depositors of the insolvent bank, have presented a petition requesting reconsideration of the decision of this court, holding that the savings depositors are preferred creditors in the distribution of the savings assets of the insolvent state bank, and share ratably with commercial depositors in the distribution of all other assets and resources of the bank: 209 Pac. 100.

As all of the commercial depositors have a direct and substantial interest in the subject matter of the litigation, careful consideration has been given to their petition. They contend: (a) That the title of the act regulating state banks (Chap. 138, Laws of 1907), contains more than one subject, and that the

subject embraced in the act respecting preferences or liens in favor of savings depositors in case of insolvency was not expressed in the title; this they say invalidated the act and the subsequent acts amending the same, or at least rendered void, the matter not expressed in the title; (b) That the statute construed to favor savings depositors, as above stated, authorized the taking of the property of commercial depositors without due process of law, in violation of the fifth and fourteenth amendments to the federal Constitution; and (c) That subdivisions (e) and (h) of Section 6220, Or. L., are repugnant to each other, and that therefore under the established rules of construction, the former must give way to the latter, with the result that all of the assets of the insolvent bank, including savings assets, must be distributed equitably and ratably among the depositors.

10. All of the details contained in the title of the act (Chap. 138, Laws of 1907), relate to the same subject, and together constitute but one general subject, viz.: regulation of state banks.

11. The provision of the acts amending that statute, granting to savings depositors a preference in the distribution of the assets of an insolvent state bank, are germane to the subject expressed in the title of the act. The act conforms to constitutional requirements.

12. A legislative enactment having a substantial basis for the classification made therein, which gives preference to one class of creditors over another in the distribution of the assets of an insolvent debtor, is not opposed to any provision of the federal Constitution. No irreconcilable repugnancy exists between subdivisions (e) and (h) of Section 6220, Or. L.; hence a case is not presented for the application of the rule of interpretation of statutes to the

effect that where ·different parts of the same statute are antagonistic and irreconcilable, the former must give way and the latter prevail.

The foregoing conclusions are so obvious that they do not require extended discussion or citation of precedents for their support. The petition for rehearing is therefore denied. Other matters treated in the brief of the above-named petitioners will be considered in discussing questions raised by the petition of defendant.

Defendant has filed a petition in which he points out that administration of the assets of the insolvent bank, in accordance with the conclusions expressed in our former opinion, brings up for decision a number of questions of vital administrative importance not touched upon in the opinion. Defendant requests an expression of the court upon those questions.

13. The first inquiry presented by defendant's petition concerns the right of setoff. It is suggested that a limitation (not recognized in the original opinion) is placed upon the exercise of the equitable right of setoff by subdivision (c) of Section 6220, Or. L., which commands, among other things, that all of the assets of the savings department—

" * * shall be held solely for the repayment of the depositors in said department, and shall not be * * used to pay any other obligation or liability of the bank, until after the payment in full of all of the depositors of said savings department."

Mr. Frank G. Dick, an attorney of The Dalles, as *amicus curiae*, has filed a petition devoted to the proposition that the right of setoff of the mutual debts of depositors and the insolvent bank in suit, applies without limitation or modification, as held in the well-considered case of *Williams* v. *Johnson,* 50 Mont. 7 (144 Pac. 768, Ann. Cas. 1916D, 595). We

will consider together the above-mentioned suggestion of defendant and the opposing contention of Mr. Dick.

The authorities cited in our former opinion establish the general rule that in the liquidation of insolvent banks, a demand of the bank against a depositor is regarded as a valuable asset in the hands of the liquidating officer only in so far as it is not offset by the debt of the bank to the depositor. The rule is well stated in the case of *Yardley* v. *Clothier*, 51 Fed. 506 (17 L. R. A. 462, 2 C. C. A. 349). The court in that case said:

"The rule of setoff is well understood to be that in all cases of mutual credit only the balance that shall appear to be due upon an adjudication of the mutual accounts should be paid, and it is that balance only which is the debt and is recoverable; that mutual obligations for the payment of money cancel each other; and that the death or insolvency of either party will make no difference in the adjustment of their mutual accounts. This rule may be modified by exceptional circumstances, or by statute, but is generally applied as here stated. The allowance of setoff has been frequently objected to in the distribution of insolvents' assets and in the settlement of decedents' estates for the reason that it would create preferences among creditors, but the controlling weight of authority has established the doctrine that, in the absence of express statutory prohibition, a setoff of a debt owing to the defendant will be allowed if it was due when the creditor's rights attached, whether the debt sued on was due at the same time or matured subsequently."

The right of equitable setoff may be modified, restricted or prohibited by statute (*Yardley* v. *Clothier*, *supra; Lippitt* v. *Thames Loan & Trust Co.*, 88 Conn. 185, 195 (90 Atl. 369), and in the absence of statute,

may be denied in exceptional cases, as where its allowance in favor of a party would work an injustice to others having equal equities: *Nashville Trust Co. v. Nashville Fourth Nat. Bank,* 91 Tenn. 336 (18 S. W. 822, 15 L. R. A. 710).

The case of *Williams* v. *Johnson,* above referred to, involved a bank which was organized and incorporated under the statutes of Montana. The decision of the court in that case clearly establishes that upon the insolvency of a state bank, which prior to insolvency had been conducting a savings department, mutual debts between the bank and the savings depositors are subject to the rules governing the right of setoff. But the Montana statute does not impose any special duty or restriction upon a bank in respect to savings deposits and assets, a fact not taken into account in our former opinion.

Section 6230, Or. L., enjoins upon a bank maintaining a savings department, the duty to keep all savings deposits received by it, and all securities in which the same are invested, separate and apart from all other moneys and funds of the bank. The investment of savings deposits is expressly restricted to specifically described securities of recognized financial soundness and readily convertible into money.

The statute further imposes the strict obligation to hold all such investments, funds and assets solely for the repayment of savings depositors, and expressly prohibits the use of the same to pay any other obligation or liability of the bank, until after the payment in full of all savings depositors. It would be difficult to select more positive and definite terms for preserving the savings assets of a bank conducting a savings department exclusively for the repayment of savings depositors. The obligations of the depository bank, created by the statute, were carried into.

and became a part of, every contract of deposit in the savings department, and attached to all of the funds, investments and securities in which such savings deposits were invested.

In *Tagg* v. *Bowman,* 108 Pa. St. 273 (56 Am. Rep. 204), the court said:

"The receipt of money by one person from another, to be applied to a specific purpose, implies an agreement on the part of the former not to apply it to any other use, and of course not to his own by pleading a setoff."

Defendant received the savings assets of the insolvent bank subject to all of the liabilities and obligations of the trust impressed thereon by the terms of the statute.

Every borrower from the savings department of the bank was charged with notice that he was borrowing funds received by the bank under a special statutory contract, and that the obligation of the borrower, together with the securities furnished by him in compliance with the statute, would be included in, and become a part of, assets that the bank is commanded by statute to hold and administer solely for the repayment of savings depositors.

To allow a depositor in the commercial department of the bank to setoff his deposit against his debt to the savings department would have the effect of diverting funds and assets held solely for the special purpose of repaying savings depositors, and using them to pay the liability and obligation of the bank to a commercial depositor. This, we think, is prohibited by the statute, and in such cases, the right of setoff cannot be allowed, and to that extent the general rules of equitable setoff are limited by the statute.

Diversion of savings assets to a prohibited use or purpose does not result where a savings deposit is

offset by a debt to the savings department or to the commercial department, or where a commercial deposit is offset by a debt to the commercial department, and in those cases the right of setoff is not affected by the statute.

14. Defendant's next request relates to the manner in which the expenses of liquidation shall be charged. The statute directs that the expenses of liquidation shall be a valid charge upon, and be paid out of, the property in the hands of the superintendent of banks, and that such expenses shall be paid first in the order of priority. The direction of the statute includes savings assets and they are chargeable with a just and equitable part of the expenses of liquidating the insolvent bank.

15. Defendant also requests an expression of the court as to the basis of distribution to savings depositors from general assets. It is conceded that the savings assets will be insufficient to pay the claims of savings depositors in full.

The claim is made in plaintiff's brief that distribution to the savings depositors from such assets should be based upon the full amount of the respective claims of such depositors until the dividends declared and distributed on such basis, together with those declared and distributed from savings assets, shall pay savings depositors in full. Plaintiffs rely upon the cases of *Kellogg* v. *Miller,* 22 Or. 406 (30 Pac. 229, 29 Am. St. Rep. 618), and *Rockwell* v. *Portland Sav. Bank,* 39 Or. 241 (64 Pac. 388), which hold in accordance with the great preponderance of authority, that where a creditor holds collateral security for the payment of his debt, and his debtor becomes insolvent, such creditor has a right to prove his entire debt against the insolvent estate and receive dividends

thereon, irrespective of collateral security held by him.

Defendant insists that the rule contended for by plaintiff would give to savings depositors an inequitable advantage over commercial depositors, and one not contemplated by, or authorized by, the statute.

Defendant further insists that the rule that equality is equity will be more nearly approximated if distribution to savings depositors from general assets is based upon the unpaid balances of savings deposits remaining after the savings assets have been distributed.

The rule for which defendant contends was adopted in the cases of *Lippitt* v. *Thames Loan & Trust Co.*, 88 Conn. 185 (90 Atl. 369), and *Peters* v. *Union Trust Co.*, 131 Mich. 322 (91 N. W. 273), under statutes similar to the Oregon statute.

In the case of a creditor holding collateral security, the court, in *Kellogg* v. *Miller, supra,* said:

" * * * that by the contract between the debtor and creditor, the creditor secures a personal right against the debtor, and also a right to proceed against the security in case the debt is not paid. The debt or personal right is the principal thing; the security being regarded as something collateral, which does not reduce the debt, but only secures the creditor *pro tanto* in case the debt is not paid in full by the debtor or his estate. In the absence of the intervention of positive or statutory law, this contract is not varied or changed by the insolvency of the debtor or his assignment, and the courts will not interfere with the rights and remedies which a creditor secures to himself by contract. Hence he may prove against the estate for the entire amount due him, and receive his dividend accordingly."

If the trust fund which secures savings depositors, might be regarded in the light of collateral security

for the payment of a debt, the statute has intervened and provided a basis for the distribution of the savings assets of a state bank that has become insolvent different from that which prevails where a creditor of an insolvent estate holds collateral security.

The statute declares that the savings assets of a state bank maintaining a savings department, shall be held solely for the repayment of the savings depositors, and shall not be liable for, pledged as security for, or used to pay any other obligation or liability of the bank, until after the payment in full of all depositors of said savings department, and that upon the insolvency or liquidation of any such bank, the savings depositors shall have an exclusive prior lien upon all the assets, including cash, of such savings department, which shall first be paid in full.

It was manifestly the design of the statute to constitute the savings assets a primary fund, to which the savings depositors should resort for repayment of their deposits, with the right, in case the savings assets proved insufficient to pay the savings depositors in full, of sharing ratably with other depositors in the general assets, upon the basis of their unpaid balances after distribution of savings assets.

The savings assets are created entirely from savings deposits, and if administered as the statute directs, the former will always equal the latter. When the savings depositors accept the fund provided by statute for the repayment of their claims, or so much thereof as remains on insolvency, and secure the application of the proceeds thereof to the payment of their claims, the measure of liability of the bank to savings depositors that the latter are entitled to assert against the general assets, is the amount of the unpaid balances of the deposits.

In the instant case the savings depositors have laid claim to, and will recover, all of the trust fund which remained upon the insolvency of the bank. That fund is now being administered with a view to a ratable distribution among the savings depositors, and a 40 per cent dividend from savings assets has been distributed to them. Savings depositors whose claims have been reduced by dividends from the savings assets are depositors, and entitled to share in the distribution of the general assets within the meaning of subdivision (h), Section 6220, Or. L., to the extent only of their unpaid balances remaining after their claims have been reduced by the application of savings assets to the payment thereof.

16. Plaintiff has petitioned the court to remand the Steelhammer suit for further proceedings, in the course of which plaintiff may be permitted to show that the litigation instituted by plaintiff was necessary to preserve a fund administered by the court, and also the reasonable value of the services rendered in that connection. The facts alleged in plaintiff's petition do not appear in the record, but in a proper case, the representations made by plaintiff might be sufficient reason for remanding the suit.

In all the cases cited in support of the authority of a court to allow attorney's fees and costs out of a fund being administered by the court, that authority was exercised where the services had added to, preserved or increased the amount being administered: See *Attorney General* v. *North American Life Ins. Co.,* 91 N. Y. 57 (43 Am. Rep. 648).

The Steelhammer suit was commenced to establish the right of plaintiff and others similarly situated, to establish their right to participate with commercial depositors in the distribution of a fund, the

whole of which was already in court and in process of administration.

No authority is found in the decided cases empowering a court, which is administering a fund under its control, to allow costs and attorney's fees, payable out of the fund, for services performed by one creditor in establishing that he and all other creditors of a certain class, are entitled to share in the distribution of that fund.

In 6 C. J. 784, the rule as established by the authorities, is stated thus:

"After the fund or property has been brought in and made available by the decree of the court, and nothing remains but its proper administration and distribution, contests which may arise between claimants, in respect to priorities or the right to share in the fund, are individual matters involving antagonistic interests, and the counsel fees of those conducting such contests cannot therefore be made a charge on the fund or on the property, but must be paid by the parties themselves."

In view of the foregoing rule, no case could be established by plaintiff, entitling her to an award of costs and attorney's fees out of the fund in the hands of the court. As to plaintiff and others who may be benefited by the litigation commenced and prosecuted by plaintiff, the court has no greater right to determine and allow attorney's fees and make the same a charge upon the subject of the litigation, than it has in the ordinary case of a contest between parties involving property rights. It appears, therefore, that no purpose would be served by remanding the cause, and accordingly the motion to remand is denied.

The several petitions for rehearing are overruled, and the former opinion is modified and extended in conformity to the views herein expressed.

REHEARING DENIED AND FORMER OPINION MODI-
FIED.