[No. 5850.]

## TABOR ET AL. v. MULLIN ET AL.

**Banks and ·Banking—Savings Banks—Insolvency—Savings Depositors—Preferred Creditors—Statutory Construction.**

Under Mills' Ann. Stats., § 528, providing that in case of the insolvency of any bank or association formed under the provision of this act, the "savings depositors" thereof shall be entitled to preference in payment over all other creditors of said bank or association, holders of time certificates of deposits in a savings bank equally with holders of savings account pass books are "savings depositors," and are entitled to preference over other creditors.—P. 406.

*Appeal from the District Court of the City and County of Denver.*

*Hon. John I. Mullins, Judge.*

A petition of intervention filed in the insolvency proceedings of The Denver Savings Bank by N. M. Tabor and Frank N. Pierce, as executors of the will of Augusta L. Tabor, deceased, and Joseph C. Freund, appearing on behalf of themselves and all other depositors of the bank similarly situated, resisting the prior petition of D. W. Mullin, M. E. Lothrop, Sarah A. Taylor, William T. Land and all other similarly situated, asking to be permitted to participate in the distribution of the assets to be made by the receiver. From a judgment sustaining a demurrer to the petition of intervention, intervenors appeal.                                    *Affirmed.*

Messrs. BARTELS & SILVERSTEIN and Messrs. KINKAID, SMITH & WOODROW, for appellants.

Mr. MILTON SMITH and Mr. CHARLES R. BROCK, for appellee Mullin.

Mr. GUY LE ROY STEVICK, for receiver.

Messrs. THOMAS, BRYANT & MALBURN, for appellee Sarah A. Taylor.

Mr. T. J. O'Donnell and Messrs. Doud & Fowler, *amici curiae*.

Mr. Justice Steele delivered the opinion of the court:

The receiver of The Denver Savings Bank filed his report with the district court of the city and county of Denver, showing, among other liabilities of the defunct bank, the following:

| | |
|---|---:|
| Saving Deposits | $1,380,225.86 |
| Commercial Deposits | 25,004.90 |
| Certificates of Deposits | 96,512.92 |
| Cashier's Checks | 448.55 |
| Certified Checks | 165.66 |

Several petitions in behalf of D. W. Mullin, M. E. Lothrop, Sarah A. Taylor, William T. Land and all others similarly situated, were filed in the district court praying that the petitioners, who held time certificates of deposits of said bank, be permitted to participate in the distribution of the assets to be made by the receiver. N. M. Tabor and Frank N. Pierce, as executors of the will of Augusta L. Tabor, deceased, and Joseph C. Freund, appearing on behalf of themselves and all other depositors of the bank similarly situated, filed their petitions of intervention resisting the application of Mullin and others, and prayed that they be declared to be preferred creditors of the bank. A demurrer to the petition of intervention was sustained; the court rendered judgment in favor of the petitioners; and from this judgment the intervenors have appealed.

Section 528 of Mills' Ann. Stats., is as follows:

"In case of the insolvency of any bank or association formed under the provisions of this act, the savings depositors thereof shall be entitled to preference in payment over all other creditors of said bank or association."

It is under this section of the statute that the intervenors claimed their right to be adjudged pre-ferred creditors. In the answer of the receiver to the petition it is alleged: "That since the bank commenced business it has received and carried a class of accounts, constituting its principal accounts both in number and value, known as savings accounts, which said accounts are entered in various savings accounts ledgers and debit and credit journals of savings. * * * That the deposits entered in such books were payable only upon the receipt of the depositor and the presentation of the pass-book of the depositor for entry of the payment therein, and that upon all such deposits, at regular intervals, to wit, on the first days of January and July in each year, interest at the rate of four per cent. per annum was credited upon the books of the bank and upon the pass-books of the depositors when the same were next presented at the bank. * * * That when money was taken into the said bank in that class of deposit or transaction mentioned and claimed in the petition of plaintiff, it was first entered upon the 'teller's book,' with the notation of 'C. D.,' and then transferred to a book called the 'Certificate Register,' and that said bank at all times issued not only the class of certificates of deposit commonly called time certificates of deposit mentioned in plaintiff's petition, but likewise demand certificates of deposit, and that both classes of deposits were entered in like manner upon the teller's book and upon the certificate register and upon the stub of the certificate book."

This, for the purposes of this case, is a sufficient description of the manner in which the books of the concern were kept. The controversy is between those holding time certificates of deposit and the depositors holding pass-books. The depositors holding

pass-books, and whose accounts were denominated by the bank as "savings accounts," are, unquestionably, "savings depositors" within the meaning of the statute; but whether those who hold time certificates of deposit are "savings depositors" or mere creditors, presents a question that requires more consideration. The section of the statute referred to was passed by the first general assembly, and is section 66 of the act to provide for the formation of corporations, and is section 256 of the general laws. Speaking of this statute, the court of appeals, in *Bank v. Evans,* 12 Colo. App., at page 344, says: "The savings bank act is not a distinct and specific act passed to regulate and control such institutions, but is part and parcel of a general act respecting corporations, many of the provisions of which are applicable to savings banks and their directors as well as to other banking corporations."

We have no doubt that the intention of the legislature was to prefer the savings depositors in all institutions where such deposits were made, and to make a distinction between savings and commercial depositors in savings banks. Daniel, in his work on Negotiable Instruments, has this to say concerning certificates of deposit: "Now, when a depositor desires to have his funds ready to check on at any moment, he takes no certificate of deposit, but uses his own check as the mode of transfer. But when he wishes his funds to be running at interest, and to remain for any extended period in bank, he usually takes a certificate of deposit, which is the bank's receipt payable at a future day, or on demand, or upon ten days' notice, as the case may be. The very nature of the instrument and the ordinary modes of business show that a certificate of deposit, like a deposit credit in a pass-book, is intended to represent moneys actually left with the bank for safe keeping,

which are to be retained until the depositor actually demands them."—2 Daniel on Negotiable Instruments, § 1698a.

One of the certificates of deposit of the bank set forth in the abstract is as follows:

"$75.00          DENVER SAVINGS BANK.

Certificate of Deposit, $75.00.

Denver, Colo., Jul. 12, '05.

M. E. Lothrop has deposited in this Bank seventy-five dollars, payable to the order of self on return of this certificate properly endorsed six months after date, with three per cent. interest per annum. No interest after maturity.

C. WOOD, Cashier.

Not subject to check."

The other certificates are in the same form. Authorities are cited holding that such certificates are negotiable, and are the equivalent of promissory notes, and because of this, and for other reasons, the appellants insist that the holders of these certificates are not "savings depositors" within the meaning of our statute, and are not entitled to preference. Although the transactions between the appellees and the bank were evidenced by certificates of deposit which were negotiable and were the equivalent of promissory notes, still they deposited their money with the bank for safe keeping, and are entitled to be regarded as depositors. Those holding passbooks containing entries of deposits and those holding certificates are creditors of the bank. It is not denied that the bank accepted the money from the holders of certificates as deposits, and not as loans.

Counsel cite in support of their position that the holders of certificates of deposit are not depositors, the case *Lansing v. Wood,* 57 Mich. 201, and

quote from the opinion of Justice Campbell, when speaking of the nature of certificates of deposit, the following: "It negatives the idea that the amount which it represents is a fund on deposit belonging to any one as depositor. We have had occasion several times to construe the legal effect of such certificates, and such has been the expression of our views."

One of the questions before the court was whether public funds can be transferred by a public treasurer to his successor by giving certificates of deposit; and in passing upon that phase of the case the justice used the language quoted. Mr. Justice Cooley, in the same case, said: "The reasons assigned for still holding Wood and his sureties responsible for this fund are: *First*, that payment by him could lawfully be made in nothing but money; and *second*, that by the city charter moneys are to be transferred from the city treasurer to the treasurer of the board of education on the order of that board. The first reason has, to my mind, no application to this case; for the transaction with the treasurer of the board was such as to amount to a deposit by himself of the amount he receipted to Wood. If Wood had first drawn the money from the bank, and Edmunds had taken and immediately deposited it, the latter, unquestionably, if he had a right to the moneys, would have taken upon himself all risks. What difference it can make that the parties did not count out the money and then count it in again, I do not perceive. It is manifest that all parties at that time understood that the fund had been transferred to Edmunds, and it is certain that he had all the evidences of right, and the complete and absolute control."

Judge Cooley, it will be observed, was of the opinion that the transaction between the incoming and retiring treasurers was a transfer of deposits;

and it follows from his language, it seems to us, that he was of opinion that one who holds a certificate of deposit should be regarded as a depositor. We cannot agree with that portion of Justice Campbell's opinion in which he states that the certificate of deposit negatives the idea that the amount which it represents is a fund on deposit belonging to any one as depositor. The certificate affirms the idea that the holder of the certificate is a depositor. It is styled a "certificate of deposit," and recites that the person has deposited in bank, payable to his order on return of the certificate, properly indorsed. It contains the words necessary to make it the equivalent of a negotiable promissory note; but it is, nevertheless, what it purports to be, a certificate that the person named has deposited a certain sum in the bank. Moreover, it was contemplated by the framers of the statutes that savings banks should issue certificates evidencing deposits. Section 523, Mills' Ann. Stats., when it states: "All certificates or evidences of deposit made by the proper officers of said banks shall be as effectual to bind the bank as if made under the common seal thereof," grants authority, by necessary implication, to savings banks to issue certificates of deposit. Although the statute includes the "savings depositors" of any bank or association formed under the provisions of the act, the bank in question being a savings bank, we are only required to determine what is meant by the "savings depositors" in a savings bank. If we accept the definition of a savings bank suggested by counsel, as a place where tradesmen, mechanics, laborers, servants, minors and others may deposit their money, for the purpose of safe keeping, and to receive interest thereon; then it would seem that any depositor in a savings bank who puts his money at interest is a "savings depositor." But we do not think it was the purpose of

the legislature to afford protection to all depositors in a savings bank who receive interest upon their deposits. As it was customary for the savings banks to provide against heavy withdrawals in time of excitement, the legislature desired, as we believe, that those who are subject to the rule concerning withdrawals, and those who deposited money for a specific time, should be preferred to those who used the bank as a convenient place for keeping their money for use in business, and who could withdraw their funds at pleasure. The original purpose of savings banks was to provide a place where deposits of small amounts of money could be placed at interest, but our statute is more comprehensive, and authorizes deposits from any one and in any amount. The only limitation the bank placed upon the amount it would receive is found in one of the rules, where it is provided that an amount in excess of five thousand dollars will not be received, except under special contract.

We have therefore concluded that the holders of time certificates of deposit and the holders of the savings account pass-books are entitled to preference in payment over the other depositors and creditors of the bank. It is worthy of mention that the only class who could not withdraw any of their funds just prior to the appointment of the receiver were those who held time certificates of deposit, and it is stated in the record that the rule permitting the withdrawal of ten per cent. only was enforced against many of the savings pass-book depositors. It is also stated that if the savings account depositors are preferred, all the funds of the bank will be exhausted in the payment of their accounts. To meet just such conditions, and to protect those who left their funds at interest, the legislature, as we believe, wisely designed to make no discrimination in the distribution

of the assets of these mismanaged concerns between those who had, placed their funds beyond immediate control.                                        *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE CAMP-BELL concur.