## WILDE, STATE EXAMINER v. RICHARDS
### (No. 1924; March 3, 1936; 55 Pac. (2d) 476)

For the plaintiff and appellant, the cause was submited on the brief of *F. B. Sheldon,* of Riverton.

410

For the defendant and respondent, the cause was submitted on the brief of *Durham* and *Bacheller* of Casper.

RINER, Justice

The Riverton State Bank, subsequently herein usually referred to as the "Bank," was on the 31st of May, 1932, and prior thereto, engaged in conducting a banking business in the Town of Riverton, Wyoming, having been authorized so to do under the banking laws of this commonwealth. For several years prior to August 19, 1932, this institution operated a savings department as well as the usual commercial banking business, such department being installed pursuant to the provisions of Section 10-130 W. R. S. 1931.

On the date first above mentioned, the defendant and respondent, R. D. Richards, a customer of the Bank for some time previously, obtained a loan from it in the sum of $500.00, and thereupon gave his note, payable on demand, for that amount and interest at eight per centum per annum, to the "order of Riverton State Bank." The money was loaned Richards from the assets of the commercial department of the Bank, and the note evidencing the loan remained a part of such

assets until July 28, 1932, when it was transferred by the officers of the institution to its savings department. Richards knew nothing of such transfer, and was not aware the Bank possessed a savings department.

It seems that this note, unindorsed and by notation on the books of the Bank only, with other assets from the commercial division of the Bank, was transferred to the savings department in lieu of certain assets of that department, which were then taken by the Bank's officers and "used for the benefit of the creditors of the commercial department." A few days before August 10, 1932, Richards made an offer of payment of the note to the Cashier of the Bank, who responded, "What is your hurry, we don't need the money." From the date of the note, May 31, 1932, until August 19, 1932, Richards always had more than sufficient money to meet it on deposit in the commercial department of the Bank. On the date last mentioned, Richards had on deposit in his commercial account with the Bank, subject to his check, the sum of $1390.49. That same day the institution was taken over by the State Examiner, the plaintiff and appellant herein, for liquidation.

From the record it is apparent that the Bank had been in trouble for several years before, and even on the date the note was given, as above described, it was, as a matter of fact, insolvent and though it continued to conduct its business, it nevertheless remained in that unfortunate condition until it was officially closed.

Shortly after the Examiner had taken possession of the Bank, the defendant requested that official to charge the amount of his note aforesaid, together with the accrued interest thereon, against the commercial deposit standing in Richards' name on the books of the Bank. This the Examiner declined to do. On the contrary, he demanded that Richards pay the note in full and take his dividends only on the commercial account

as they should be declared. Richards asserted that he was entitled to a set-off, as above indicated, and refused to settle the matter otherwise. Accordingly this action was brought in the district court of Fremont County to recover on the note, and appropriate issues were framed by the pleadings to set forth the several contentions of the parties.

The case was tried to the court without a jury, with the result that a judgment was entered on December 28, 1934, directing the Examiner to transfer the note of the defendant from the savings department to the commercial department of said Bank and to pay to the savings department, either in money or authorized securities, from the commercial department, the sum of $500.00, with interest at eight per cent per annum from May 31, 1932, to the date of judgment. The Examiner was also directed to charge this amount of the note, with interest, against the defendant's commercial account in said Bank, and it was determined that the defendant was entitled to dividends declared by plaintiff from the liquidation of the assets of the commercial department on the balance remaining after this deduction had been made. The Examiner has brought the record here for review by direct appeal. The only question for decision is whether the defendant was entitled under the facts disclosed and the laws applicable to set off his note against his commercial deposit in the failed institution.

Section 10-130 W. R. S. 1931, under which the Bank was authorized to transact business by means of a savings department, reads as follows:

"Any bank or trust company organized under the laws of this state may operate a savings department in connection therewith; provided, that every bank or trust company which maintain a savings department or solicits or receives deposits as savings, shall keep separate books of account for each kind of business.

Such bank or trust company may invest 90 per cent of such deposits in the bonds of this state, or in the bonds of the United States or in Farm Loan Bonds issued by any Federal Land Bank or joint stock Land Bank organized under an Act of Congress approved July 17, 1916, entitled 'An Act to provide capital for agricultural development' and known as the 'Federal Farm Loan Act' and acts amendatory thereto, or in the bonds of any city, county, town or school district in the state legally authorized to issue said bonds or loan the same upon the notes or bonds secured by a mortgage or trust deed upon unincumbered real estate, or chattels worth at least double the amount loaned; Provided, further, that all investments relating to the savings department shall be kept entirely separate and apart from the other business of the bank, that such portion of said savings deposits as are on hand unloaned or deposited with other banks and the investments made with the funds deposited by savings depositors shall be held solely by such bank or trust company for the payment of depositors of said funds."

Under substantially similar statutory phraseology it has been held that upon the insolvency of such an institution, the depositors in a savings department are entitled to a preference relative to the investments made with their deposits.

In Peters v. Union Trust Co., 131 Mich. 322, 91 N. W. 273, there was before the court a petition by Peters against the Union Trust Co., as receiver of the City Savings Bank of Detroit, and Harris & Throop, representing the commercial depositors of said bank, to establish a preference in certain securities in favor of the savings depositors. The law (2 Comp. Laws of Michigan, § 6118), under which the defunct bank had operated, provided:

"Any bank combining the business of a commercial bank and a savings bank shall keep separate books of account for each kind of business: Provided, that all receipts, investments, and transactions relating to each of said classes of business shall be governed by the provisions and restrictions herein specifically provided for

the respective kinds of banks: And provided further, that all the investments relating to the savings department shall be kept entirely separate and apart from the other business of the bank, and that the fifteen per cent reserve, required by the provisions of this act to be kept on the savings deposits, shall be kept separate and distinct from the reserve required on the commercial deposits, and that such portion of said savings deposits as are on hand unloaned, or deposited with other banks or reserve agents, and the investments made with the funds deposited by savings depositors, shall be held solely for the payment of the depositors of said funds."

Affirming that part of the order of the trial court which gave a preference to the savings depositors as to investments which had their origin in the use of funds from the savings department, the conclusion of the court was stated:

"As it is entirely possible to trace the fund which was invested in these securities as a fund derived from the savings department, we think there is no difficulty in saying that it should be impressed with a trust in favor of the savings depositors. See Ledyard v. Hibbard, 48 Mich. 421. (12 N. W. 637, 42 Am. Rep. 474) ; Sherwood v. Bank, 103 Mich. 109 (61 N. W. 352) ; Board of Fire & Water Com'rs of Marquette v. Wilkinson, 119 Mich. 655 ('78 N. W. 893, 44 L. R. A. 493)." See also Tabor v. Mullin, 37 Colo. 399, 86 Pac. 1007.

As already noted, the quoted provisions of the law of Michigan concerning the matter of the preference to be given savings depositors, when a banking institution having both commercial and savings departments fails, are practically identical with the requirements of Section 10-130 W. R. S., 1931, supra. The case of Reichert, State Banking Com'r, v. Fidelity Bank & Trust Co., 257 Mich. 535, 242 N. W. 236, is accordingly especially in point here, as will be apparent from its facts, which briefly were:

The Paw Paw Savings Bank had kept for some years a commercial account with the Fidelity Bank & Trust

Co., a banking institution organized as a trust company and authorized also to conduct a general banking business, with commercial and savings departments. The institution failed and was closed October 7, 1931. At that time the Paw Paw Bank owed it $10,734 on a note for money borrowed, and had commercial credits on deposit account and certificate of $9,415.85. When the note was given the loaning bank's officials "allotted and allocated it" to the commercial department, but the next day transferred it to the trust department, where it remained. The Paw Paw Bank knew nothing of this transfer, which was made in accord with the practice of the loaning bank to daily make transfer of assets from one department to another to comply with statutory requirements touching investments and reserves in different departments. Reichert, receiver of the failed institution, declined to allow the Paw Paw Bank the right to set off its commercial credits against the note, claiming that the allowance of such a credit against a trust department note would deplete the assets of that department in violation of the controlling statute (Compiled Laws of Michigan 1929, § 12019), which provided:

"* * * All such other securities and assets of the company shall be segregated as trust department assets and held by the company primarily for the benefit and security of the creditors of the company in its trust department and shall be used and applied for the satisfaction of any and all such creditors before the same, or any part thereof, shall be used or applied for the benefit or security of depositors or other creditors of said company in either its commercial or savings bank business."

Reversing an order sustaining the receiver's contention, the rights of the parties were defined by the Supreme Court of Michigan in the following language:

"Although it has three departments, an institution like defendant is a single legal corporate entity, and is

so dealt with by the public. By deposit, the relation of creditor and debtor is created. By loan, the relation of creditor and debtor is created. In both instances the relation is between the corporation, not a department of it, and the customer. The accounts are mutual, and each party is entitled to set off against the other. Comp. Laws 1929, § 14132; In re Edgar, 185 Mich. 24, 151 N. W. 602, Ann. Cas. 19170, 1203; 25 A. L. R. 938, note; Ann. Cas. 1916D, 599, note.

"The right of set-off is valuable and should not be infringed or denied to either bank or customer unless, because of the statutes giving preferences to savings depositors and trust creditors in the assets of the respective departments, there is no alternative. Any conflict must be resolved to conserve both right and preferences, if it can be done.

"It will be conceded that the full statutory preferences to savings depositors and trust department creditors must be preserved. Equally important, however, it must be accepted that neither is entitled to greater preference than the statutes give, and that the preference cannot be increased at the expense of the creditors in another department. Any rule which decreases or increases the statutory preference is unsound.

\* \* \* \* \* \*

"The effect of partial or no cross-departmental set-off should be considered. It would result in a receiver being compelled to pay dividends on a deposit, although, in another department, he holds a note of the depositor which he cannot collect, and would force him to take legal action to subject dividends to the loan. Worse, it would enable the officers of an operating bank, by marks on a book, to transfer a loan to or from the department of deposit, and thereby to grant or deny the depositor a set-off, at their pleasure and to its advantage. The latter situation is intolerable.

"It is not a good excuse for such injustice and inequity to say that the customer is presumed to know of the departmental preferences established by statute and to deal with the bank with reference to them. The customer has no power or duty to keep the books of the bank, to select the department to hold the loan, nor to keep it there, nor to transfer it back and forth between

departments. He deals with the bank as an entity, which it is, and its internal business is not his concern.

"The allowance of set-off without infringement of statutory preferences offers no difficulties to a court of equity.

\* \* \* \* \* \*

"While the bank is operating, the right to full set-off cannot be doubted. If it is a cross-departmental set-off, it is the duty of the officers to make such a transfer of money or security on its books as will preserve the statutory balances. The customer is entitled to have this right of set-off preserved under a receiver.

"When the bank closes, the duty falls upon the receiver to determine the net assets, which he does by allowing proper set-offs. If the allowance of set-off results in interdepartmental disturbance, the receiver, under order of the court, must exercise the power formerly held by the officers and make adjustments of assets from one department to another to preserve the statutory requirements of each. The transfer merely amounts to taking assets represented by the deposit from the department to which they do not belong, because of the set-off, and putting them into the department of loan which is entitled to them, because of the set-off. Unless, in an individual case, a more equitable method may appear, adjustment in money is always practical. By this method the customer's right of set-off is fully protected, and the statutory preference fully conserved.

"Such adjustment is within the equitable powers of the court because its arm, the receiver, stands in the place of the bank."

Where a trust company illegally pledged securities which were a part of the assets of its savings department, for loans for the benefit of its commercial department, some of these securities having been sold and some not when the Commissioner of Banks took charge of the company's business, and thereafter all such securities were disposed of rather than redeemed, it was held in In re Cosmopolitan Trust Co., 240 Mass. 254, 133 N. E. 630, that it was the Commissioner's duty

to pay these debts and replace the securities in the savings department as of the date when he took charge of the defunct institution, and, having permitted them to be sold, he was bound to restore the equivalent in money value from the assets of the commercial department. Speaking of the obligation thus arising upon the Commissioner of Banks, the court remarked: "It was his obligation to use the resources of the commercial department for the purpose of repairing the breach of trust committed by the trust company against the depositors in the savings department."

It will be observed that the judgment in the instant case is largly patterned in accordance with what was directed by the reviewing court to be done in the Reichert case, above cited, and harmonizes with the conclusion reached by the Supreme Court of Massachusetts in In re Cosmopolitan Trust Co., Supra. That such procedure was just and equitable we entertain no doubt, especially when it is examined in the light of the clearly established fact that here the Riverton State Bank was wholly insolvent prior to and at the time when its officers undertook to transfer the Richards' note from the Bank's commercial department to its savings department.

Section 10-502 W. R. S., 1931, declares that:

"All transfers of notes, bonds, bills of exchange or other evidence of debt owing to any state bank or of deposits to its credit, all assignments of mortgages, securities or real estate or of judgments or decrees in its favor, all deposits of money, bullion or other valuable things for its use or for the use of any of its shareholders or creditors, and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, shall be utterly null and void."

Section 10-141 W. R. S. 1931, requires every bank to "at all times, maintain a reserve fund of at least twenty per centum of its liabilities to depositors, which reserve shall be represented by cash in the vaults or safes of the association, or on deposit subject to call, with national or state banks approved by the State Examiner as reserve agents".

Section 10-142 W. R. S. 1931, enacts in the first sentence thereof that, "Whenever the reserve of any bank shall fall below the amount herein required to be maintained, such bank shall not increase its loans and discounts, other than the discounting or purchasing of bills of exchange payable at sight or on demand, nor make any investments of its funds or dividend of its profits, until the required reserve is restored."

We consider that the quoted statutes indicated a banking policy declared by the Legislature, which forbade the officers of an insolvent state banking institution doing that which was undoubtedly done here, viz., —the removal of assets from the savings department and the substitution therefor of assets belonging to another department of the bank, which were, besides, not of the character contemplated by law as proper and safe investments for savings department deposits. To stamp with approval such shifting of assets after insolvency would, it is easy to perceive, enable the officers of a failed banking institution to work injustice and defeat the right of savings department depositors and commercial department creditors alike. The transfer of bad notes and securities could readily accomplish that result.

Cases from other jurisdictions have been called to our attention by appellant, but none of them present facts such as appear upon the record before us. The statutory provisions under which they were decided differ also from those controlling in this state.

The fact is established by stipulation in this case, as heretofore has been recited, that the assets taken from the savings department when the note transfer was made were "used for the benefit of the creditors of the commercial department." What assets were taken from the savings department or how the commercial department creditors received the benefit thereof, the record fails to disclose. We can see only equity, therefore, in the judgment of the trial court, that the receiver restore the situation to that existing before the bank's officers did what they should not have done. The commercial department, having had the benefit of the transfer, it probably should bear the consequences of the unauthorized action of its officers. When the status of the matter was restored to that existing prior to the transfer of the note, as directed by the district court, the savings bank depositors were protected, and the defendant's right of set-off was not impaired. It is perfectly plain that if Richards had been allowed to pay the note, as he offered to do, and had not been dissuaded therefrom by the Bank's cashier, no question of set-off would have arisen. The Bank would have been obliged to take Richards' check on his commercial department account and to surrender his note.

The judgment of the district court of Fremont County will be affirmed.

*Affirmed.*

KIMBALL, CH. J., and BLUME, J., concur.